## REPUBLIC OF MEXICO et al. v. HOFFMAN.

### THE BAJA CALIFORNIA.

### No. 10475.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Concurring Opinion July 19, 1944.

Ben Van Tress and James R. Jaffray, both of Los Angeles, Cal., for appellants.

Farnham P. Griffiths, of San Francisco, Cal., and Harold A. Black and McCutchen, Thomas, Matthew, Griffiths & Greene, all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a final decree holding the Steamer Baja California, owned by the appellant Republic of Mexico, hereinafter called the Republic, liable and awarding damages for the sinking and total loss of the American Schooner Lottie Carson in the Harbor of Mazatlan, Mexico, by the Baja California, then towing the

---

[3] See, however, Fewox v. United States, 5 Cir., 77 F.2d 699.

[4] See cases cited in footnote 2.

Mexican Steamer Campeche, causing her tow to collide with the Lottie Carson. The sole question on the appeal is the validity of an order of the district court denying the Republic's claim of the Baja California's immunity from the jurisdiction of that court.

The appellee Hoffman had libeled the Baja California, a monition in rem issued to the Marshal, who gave due notice by citation to all persons claiming her. It is conceded that the Republic's ownership and possession and her occupation in its service when the vessel was attached by the process in rem, would entitle it to withdraw her from the court's jurisdiction. Absent such ownership, possession and occupation, the jurisdiction continues and the Republic, if so advised, could contest the issues tendered by the libel. It is also conceded that the Baja California is liable for the injuries and the decree must be affirmed if it be held that the Republic was not entitled to withdraw the Baja California from the admitted existing jurisdiction of the district court or, if so entitled, had waived its right to such withdrawal.

On December 24, 1941, the Republic's claim to immunity from the court's jurisdiction was first asserted in a Suggestion of the Mexican Consul at Los Angeles, California, acting for the Ambassador for Mexico to the United States. The suggestion alleged that the Baja California was owned by the Mexican Government and in its possession and service at the time of her seizure. On January 28, 1942, appellee answered this Suggestion of the Republic made through its consul, joining issue on the claim of such ownership, possession and service.

■ On the day of the filing of the answer to the first Suggestion, the United States Attorney for the Southern District of California, under the direction of the Attorney General, "as a matter of comity between the United States Government and the Government of Mexico for such consideration as this Court may deem necessary and proper" filed a second Suggestion transmitting a Note of the Mexican Ambassador to our Secretary of State, but claiming no more than that the Baja California was owned by the Republic when she came into the jurisdiction of the district court. Since our government did not "recognize or allow" the second Suggestion of the Republic, but did no more than to present it, the jurisdiction of the district court continued for the determination of the issue joined on the first Suggestion.[1]

The district court, at a preliminary hearing, entertained the issue so raised. Evidence was adduced and the court gave its order and decree holding that it was "unable at this time to find * * * any requirement or ground ousting the jurisdiction of this court in this proceeding," and declined to allow the withdrawal of the vessel. The interlocutory character of the order of declination appears not only from the words "at this time" but from the court's further holding that "The foregoing order is in toto made and entered without prejudice to intervention and/or claim herein by the Republic of Mexico and/or the Ambassador to the United States for the Republic of Mexico and/or his accredited representative and agent, within twenty days from this date, for the purpose of asserting the Mexican Government's ownership and right to possession of the vessel in controversy, and any other applicable remedy or relief * * *."

■ The time to intervene and assert any or all the Republic's claims was extended to March 26, 1942. No default having been taken against the Republic, it was within its right to respond to the citation when, four days later, it filed its claim and answer to the libel, in which it again asserted its sovereign right to withdraw the vessel. In the absence of default, no error is or could be asserted as to the time of the filing of the repeated claim of immunity. However, it is claimed that the Republic's answer, though it "expressly reserves the right of sovereign immunity," is a general appearance which waives its right to withdraw the vessel from the court's jurisdiction.

■ We hold that the decision "without prejudice" and "at this time" holding adversely to the Suggestion of the right to withdraw the vessel, did not deprive the court of jurisdiction again to entertain it and that a sovereign in response to the citation in rem may assert all its rights in the res, at the same time including its reserved sovereign right to withdraw the vessel from the court's jurisdiction. In The Navemar, supra, 303 U.S. at page 76, 58 S.Ct. at page 435, 82 L.Ed. 667, the Supreme

---

[1] The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667; The Katingo Hadjipatera, 2 Cir., 119 F.2d 1022, affirming 40 F.Supp. 546.

Court said of a similar suggestion by the Spanish Government:

. "* * * But as the suggestion was tendered in support of an application to appear as a claimant in the suit, and as it put forth a claim to title and right to possession of the vessel, the Ambassador should have been permitted to intervene and, if so advised, to litigate its claims in the suit. In Ex parte Muir, supra, [254 U. S. 522, 41 S.Ct. 185, 65 L.Ed. 383] and in The Pesaro, supra, 255 U.S. 216, 219, 41 S.Ct. 308, 65 L.Ed. 592, the Ambassador of the intervening government challenged the jurisdiction of the court, but did not place himself or his government in the attitude of a suitor. Here the application as construed by the trial court was for permission to intervene as a claimant. We think the applicant should be permitted to occupy that position if so advised."

A different judge heard the case on the claim and answer of the Republic to appellee's libel. That judge found that "Claimant has set forth no additional evidence and has shown no extraordinary circumstances justifying this court in again passing upon the issue of sovereign immunity. If claimant was dissatisfied with the prior ruling of Judge McCormick, it could have had the issue finally determined on review by an appellate court."

■ Assuming, though not deciding, that an appeal could have been taken from Judge McCormick's order, deciding an issue raised as to but one of the "bundle of rights" constituting national ownership,[2] we hold that the order may be reviewed on this appeal from the final decree.

It is agreed here that the title to the Baja California was in the Republic. The Republic contends that it had possession of the Baja California at the time the torts occurred and was operating her in a governmental service, bringing her within the decision of The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 160, 66 L.Ed. 299. In that case The Western Maid, owned by the United States, was held immune. She was allocated by the government to the United States Shipping Board for service as a transport and was carrying foodstuffs for civilian relief in Europe to be administered under the United States Food Administration Grain Corporation. She was manned by a Navy crew. The Court said, "* * * that she was engaged in a pub-

lic service that was one of the constituents of our activity in the war and its sequel and that had no more to do with ordinary merchandising than if she had carried a regiment of troops." Supporting its decision in The Western Maid, the Supreme Court cites with approval a New York circuit court case, The Fidelity, Fed.Cas.No. 4,758, in which that court stated, "Property does not necessarily become a part of the sovereignty because it is *owned* by the sovereign. To make it so, it must be devoted to the public use, and must be employed in carrying on the operations of the government." (Emphasis supplied.)

The appellee contends that the Republic has not brought the case within the Western Maid decision, because it was not operating the Baja California and she was not engaged in any public function or devoted to a public use. On the contrary, appellee contends, that by contract the Republic had delivered her over to a private Mexican corporation, the Compania Mexicana de Navegacion del Pacifico, S. de R. L., hereinafter called the Corporation, for the Corporation's possession and control in a private freighting venture, where it was seeking its profits exactly as does every other vessel in the Mexican Merchant Marine.

■ We agree with appellee's contention and the district court's finding that "At the time of the collision * * * and at the time of filing the libel and the service of the monition herein, she [the Baja California] was in the possession, operation and control of respondent Compania Mexicana de Navegacion del Pacifico, S. de R. L."

It was stipulated in writing and admitted in open court by proctors for the Republic that the Baja California was "delivered by the Mexican Government on August 27, 1941, to the Cia Mexicana de Navegacion del Pacifico, the Corporation made a respondent in personam in the libel," and that the Baja California was on and after October 3, 1941, "and at the time of seizure under process herein, being operated by the said Cia Mexicana de Navegacion del Pacifico under the terms and conditions of the contract designated said Republic's Exhibit 'A'." The contract itself recites the fact that the Baja California was delivered by the Republic to Mr. Abaunza, the general manager of the Corporation, on August 27, 1941.

[2] Under 28 U.S.C.A. § 227; cf. Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 458, 55 S.Ct. 475, 79 L. Ed. 989.

Full provision for the formalities and details of transfer or delivery of the vessel to the Corporation is contained in the Sixth Article of the contract. The contract provided that the Corporation was to "commercially operate and handle" the vessel for a period of five years with an option to renew the contract for an additional five years. The Corporation is privately owned and operated, with a paid in capital of one hundred thousand pesos.

The Republic, doubtless because it was aware of the universal maritime rule of liability in rem for cargo and collision damage for which the vessel is responsible, inserted the following provision in the contract:

"Fifth: The Company promises to insure the said ships against all risks, and to keep in operation the respective insurance policies for the duration of this contract."

This provision, and the Third Article relating to operating expenses, show that the entire risk of the venture was intended to be thrown upon the Corporation. It was in no sense the alter ego or mere operating agency for the Republic. If there were losses arising from the operation or handling of the Baja California, they were to be borne by the Corporation—presumably either from accumulated surplus, if any, from capital, from loans, or from insurance policies covering "all [insurable] risks." If the aggregate expenses were less in amount than the gross income, the Corporation was to pay to the Republic an amount equivalent to one-half the net profits.

In pursuance of the terms of the contract the Corporation did retain possession of the Baja California and direct her commercial operation. It manned the vessel with its own officers and crew and paid their salaries and wages, furnished and paid for all supplies and all other expenses incurred in her operation.

The Baja California was not being operated basically differently from other private Mexican merchant vessels. The contract requirement that one-half the net profits of the vessel's operation should be paid to the National Treasury merely complies with Article 110 of the Mexican Law of General Means of Communication providing for governmental "participation" in the revenue of all private companies operating means of transport, which participation shall be specified in the concessions or permits. The contract requirements that the vessel follow routes determined by the Mexican Navy, carry the mails, and transport federal officials at 50 percent of the regular fares are those which Articles 200, 104 and 102 of the Mexican Law of Means of Communication respectively impose on all merchant vessels.

The Republic claims that even though the Baja California was not in its possession, either when the collision occurred or when libeled in rem and seized by the Marshal, the mere fact of ownership of her title warranted her withdrawal from the court's jurisdiction. The district court held against this contention and we agree. In admiralty sovereign immunity requires actual and not the mere constructive possession flowing from ownership of the title.

This question was determined by the Supreme Court in The Navemar, supra. In that case a private Spanish shipowning corporation libeled the Steamer Havana in the district court for the Eastern District of New York, seeking to regain her possession from a mutinous crew who had taken possession. The vessel was attached and in the possession of the Marshal and a default decree was rendered in favor of the libelant. While on the voyage enroute to New York, the Spanish Government issued a decree of attachment transferring the title from the corporation to the government. The Spanish Ambassador, without recognition of the claim by our State Department or otherwise, sought to have the default decree set aside and (a) to withdraw the vessel from the jurisdiction of the district court, claiming ownership and possession in the Spanish Government, and (b) otherwise, if the jurisdiction was not withdrawn, to intervene and assert the Spanish Government's ownership and right to possession.

On the issue of the right to withdraw the vessel from the jurisdiction of the district court, the Ambassador's affidavits purporting to show that the Spanish Government had taken possession under its decree were met by the counter-affidavits of the corporation. The district court held, on the facts, that the Spanish Government had not acquired possession under the decree and that lacking possession the Navemar was not immune from seizure in rem. On the alternative issue of the right of the Spanish Government to intervene as a liti-

gant recognizing the jurisdiction of the court and invoking its decision on the question of ownership and right to possession, the district court held against that government and refused to set aside the default decree.

On appeal the Second Circuit reversed, holding that the district court was concluded by the Spanish Government's mere claim of possession—that is, although the claim was not supported by our government the claim could not be denied and, without more, required the Navemar's withdrawal from the district court's jurisdiction. The circuit court of appeals decreed the dismissal of the libel.

On certiorari to the Supreme Court the order of the circuit court of appeals dismissing the libel was reversed, that Court holding that unless recognized by our government the foreign government's claim of immunity merely tendered an issue which could be joined for a decision. The finding of the district court of want of possession in the Spanish Government was sustained and its decree declining to yield its jurisdiction was affirmed. On the question of the right of Spanish Government to intervene to set aside the default and seek to establish ownership and right to possession, the district court was reversed and the case was returned to that court to entertain these contentions.[3]

We agree with appellee that this case is controlled by the Navemar decision. In both cases the ownership was in the governments seeking immunity. In both the wrongful acts complained of by the libelants occurred when the vessels were not in the possession of those governments. Their possession did not exist when the vessels were attached in the proceedings in rem. We are unable to make any pertinent distinction between the position of a government which has acquired title but not possession of a vessel and that of a government owning a vessel, of which, by contract, it has surrendered possession to a private corporation which is acting independently in a private enterprise.

We hold that the Republic of Mexico was not entitled to withdraw the Baja California from the jurisdiction of the district court.

The decree is affirmed.

MATHEWS, Circuit Judge (concurring in the result).

The Mexican steamship Campeche, in tow of the Mexican steamship Baja California, collided with the Amerian schooner Lottie Carson in the harbor of Mazatlan, Sinaloa, Mexico. The Baja California, was owned by appellant, the Republic of Mexico, but was not in appellant's possession or service. Instead, she was in the possession of and was operated by a Mexican corporation. The collision was caused by the corporation's negligence and resulted in the sinking and total loss of the Lottie Carson. Appellee, R. B. Hoffman, owner of the Lottie Carson, libeled the Baja California in the District Court of the United States for the Southern District of California, seeking thereby to recover damages for the loss of the Lottie Carson. Process was issued and the Baja California, being then within the Southern District of California, was attached by the United States Marshal for that District.

Appellant, appearing specially, suggested to the court that the Baja California was immune from process and hence should be released.[1] In a note to the Secretary of State of the United States, appellant's Ambassador to the United States claimed that the Baja California was immune and requested the Secretary to recognize the claimed immunity and to obtain recognition thereof by the court. Instead of complying with the Ambassador's request, the Secretary transmitted to the Attorney General of the United States a copy of the

---

[3] On the second hearing the district court held against the Spanish Government's claim of ownership and right to possession. 24 F.Supp. 495. The circuit court of appeals reversed and awarded the vessel to the Spanish Government, incidentally stating, "Moreover, the Supreme Court referred back only the question of title and right to possession for determination at the new trial, and not the question whether the Navemar was immune from judicial process." 2 Cir., 102 F.2d 444, at 446.

[1] My associates (Judges Denman and Stephens) speak of this suggestion as "a Suggestion of the Mexican Consul at Los Angeles, California." Actually, it was appellant's suggestion, signed by its proctors, Ben Van Trees and James R. Jaffray, members of the bar of the District Court and of this court.

Ambassador's note and requested the Attorney General to direct the United States Attorney for the Southern District of California to appear before the court and "report to it the position of [appellant] as set forth in the Embassy's note." That was done.[2] The court refused to recognize the claimed immunity and entered a decree in appellee's favor. From that decree this appeal is prosecuted.

Appellant specifies as error the court's refusal to recognize the claimed immunity, appellant's contention being that such immunity existed despite the fact that the Baja California was not in appellant's possession or service. The contention must be, and is, rejected upon the authority of Compania Espanola v. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667. Holding, as we must, that the claimed immunity did not exist, we need not and, I think, should not consider appellee's contention that the right to claim it was waived by appellant.

My associates say: "It is conceded that the Republic's [appellant's] ownership and possession and her occupation in its service when the vessel [the Baja California] was attached * * * would entitle it to withdraw her from the court's jurisdiction. * * * It is also conceded that * * * the decree must be affirmed if it be held that the Republic was not entitled to withdraw the Baja California from the admitted existing jurisdiction of the district court or, if so entitled, had waived its right to such withdrawal." There are no such concessions. Appellant did not admit the District Court's jurisdiction of the Baja California, nor seek to "withdraw" her from that jurisdiction. Instead, appellant sought her release upon the ground that she was immune from process, which is to say, upon the ground that the court had no jurisdiction of her; appellant's suggestion being, in effect, a plea to the court's jurisdiction.[3]

My associates say: "The District Court * * * declined to allow the withdrawal of the vessel." Actually, no question of "withdrawal" was ever presented to or considered by the court.

My associates say: "No default having been taken against the Republic, it was within its right to respond to the citation when * * * it filed its claim and answer to the libel in which it again asserted its sovereign right to withdraw the vessel. * * * However, it is claimed that the Republic's answer * * * is a general appearance which waives its right to withdraw the vessel from the court's jurisdiction." Actually, appellant never asserted any right to "withdraw" the vessel. No such right having been asserted there was, of course, no claim that any such right had been waived. What appellant asserted in its suggestion and reasserted in its answer and claim was that the vessel was immune from process. Appellee contended that the claimed immunity, if it existed, was waived. Since, as we hold, the claimed immunity did not exist, the question of waiver need not be considered.

My associates say: "We hold that the [District Court's] decision * * * holding adversely to the Suggestion of the right to withdraw the vessel, did not deprive the court of jurisdiction again to entertain it and that a sovereign in response to the citation in rem may assert * * * its reserved sovereign right to withdraw the vessel from the court's jurisdiction." There was in this case no suggestion or assertion of any right to "withdraw" the vessel from the court's jurisdiction and, therefore, no decision on that subject.

My associates say: "The Republic claims that * * * the mere fact of ownership of her [the Baja California's] title warranted her withdrawal from the court's jurisdiction. * * * We hold that the Republic of Mexico was not entitled to withdraw the Baja California from the jurisdiction of the District Court." Actually, no question of "withdrawal" is presented. Nowhere in the record or in the briefs of counsel is "withdrawal" mentioned. The first mention of it was by my associates.

---

[2] The United States Attorney labeled his report "Suggestion by the United States Attorney for the Southern District of California." My associates describe it as "a second suggestion transmitting a note of the Mexican Ambassador to our Secretary of State, but claiming no more than that the Baja California was owned by the Republic [appellant] when she came into the jurisdiction of the District Court." Actually, the United States Attorney's report claimed nothing, suggested nothing.

[3] Cf. Compania Espanola v. The Navemar, supra.

Referring to the case of Compania Espanola v. The Navemar, supra, wherein a Spanish corporation libeled a Spanish vessel and obtained a default decree in the District Court of the United States for the Eastern District of New York, my associates say: "The Spanish Ambassador * * * sought to have the default decree set aside and (a) to withdraw the vessel from the jurisdiction of the district court, claiming ownership and possession in the Spanish Government, and (b) otherwise, if the jurisdiction was not withdrawn, to intervene and assert the Spanish Government's ownership and right to possession. On the issue of the right to withdraw the vessel from the jurisdiction of the district court, the Ambassador's affidavit * * * were met by the counter-affidavits of the corporation." Actually, no "withdrawal" was sought, nor was any question of "withdrawal" presented, considered or decided in the Navemar case. The Navemar case is, however, authority for the proposition that a vessel owned by, but not in the possession or service of, a foreign government is not immune from process.

The decree should be affirmed.