REPUBLIC OF MEXICO ET AL. *v.* HOFFMAN.

No. 455.  Argued January 11, 12, 1945.—Decided February 5, 1945.

*Mr. Morris Lavine* for petitioners.

---

*Mr. Harold A. Black,* with whom *Messrs. Farnham P. Griffiths* and *Allan P. Matthew* were on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question is whether, in the absence of the adoption of any guiding policy by the Executive branch of the government, the federal courts should recognize the immunity from a suit in rem in admiralty of a merchant vessel solely because it is owned though not possessed by a friendly foreign government.

Respondent, owner and master of the Lottie Carson, an American fishing vessel, filed a libel in rem in the district court for southern California against the Baja California, her engines, machinery, tackle and furniture, for damage alleged to have been caused when the Baja California negligently caused her tow to collide with the Lottie Carson in Mexican waters. The Mexican Ambassador to the United States, acting in behalf of his government, thereupon filed in the district court a suggestion that the Baja California at all times mentioned in the libel and at the time of her seizure was owned by the Republic of Mexico and in its possession, and engaged in the transportation of cargoes between the ports of the Republic of Mexico and elsewhere. Libellant put in issue the allegations of the suggestion that title to the Baja California was at any time in the Mexican government and denied that she was in that government's possession, public service or use. Trial of these issues proceeded upon stipulated evidence.

In the meantime the United States Attorney for the District, acting under the direction of the Attorney General, filed in the district court a communication from the Secretary of State to the Attorney General, in which the State Department called attention to the claim of the Mexican government, already detailed. The Department

took no position with respect to the asserted immunity of the vessel from suit other than to cite *Ervin* v. *Quintanilla,* 99 F. 2d 935, and *Compania Espanola* v. *The Navemar,* 303 U. S. 68. In *Ervin* v. *Quintanilla, supra,* the asserted immunity from suit of the San Ricardo, a vessel of the Mexican government, was allowed by the court on the ground that at the time of her seizure upon a libel in rem she was in the possession and service of that government. And in *Compania Espanola* v. *The Navemar, supra,* the State Department having failed to recognize the claimed immunity of the Spanish vessel Navemar, alleged to have been expropriated by and in the possession of the friendly Republic of Spain at the time of her seizure upon a libel in rem, this Court denied the claimed immunity on the ground that the libelled vessel was not shown to have been in the possession and public service of the foreign government.

The district court was unable to find, under the rule of *The Navemar, supra,* any ground for relinquishing the jurisdiction over the vessel, and accordingly denied the claim of immunity. The Mexican government then filed an answer to the libel by which it put in issue the material allegations of the libel on the merits and renewed its claim of sovereign immunity from the suit. The court then proceeded with the trial on the merits.

A second suggestion was then filed by the United States Attorney at the direction of the Attorney General, transmitting a communication from the State Department, stating that it accepted as true the contention that the Baja California was the property of the Mexican government and that it recognized a statement by the Mexican Ambassador that his government would meet any liability decreed against the vessel as a binding international undertaking. The district court denied the claim of immunity, finding that the ship was in "the possession, opera-

tion, and control" of the Compania Mexicana de Navigacion del Pacifico, S. de R. L.  This was a privately owned and operated Mexican corporation engaged in the commercial carriage of cargoes for hire for private shippers. On the merits the district court gave judgment for the libellant.

The Circuit Court of Appeals for the Ninth Circuit affirmed, 143 F. 2d 854, holding on the authority of *The Navemar, supra,* and *The Katingo Hadjipatera,* 119 F. 2d 1022, that the Baja California, although owned by the Mexican government, was not immune from suit because not in its possession and service.  We granted certiorari, 323 U. S. 697, on a petition which presented the question whether title of the vessel without possession in the Mexican government is sufficient to call for judicial recognition of the asserted immunity.

The decisions of the two courts below that the vessel was not in the possession or service of the Mexican government are supported by evidence and call for no extended review here.  It is sufficient that it appears that before the injury to the Lottie Carson the Baja California was delivered by the Mexican government to the privately owned and operated Mexican corporation under a contract for a term of five years.  As provided by the contract the corporation was to operate the vessel at its own expense in a private freighting venture on the high seas between Mexican ports and between them and foreign ports, and did so operate the vessel until her seizure upon the libel.  The officers and crew were selected, controlled and paid by the corporation.  For the use of the vessel the corporation agreed to pay to the Mexican government fifty per cent of the net profits of operations but undertook to bear all net losses.

The principal contention of petitioner is that our courts should recognize the title of the Mexican government as

a ground for immunity from suit even though the vessel was not in the possession and public service of that government. Ever since *The Exchange,* 7 Cranch 116, this Government has recognized such immunity from suit, of a vessel in the possession and service of a friendly foreign government, *L'Invincible,* 1 Wheat. 238, 252; *The Divina Pastora,* 4 Wheat. 52, 64; *United States* v. *Cornell Steamboat Co.,* 202 U. S. 184, 190; *Ex parte Muir,* 254 U. S. 522, 531–533; *The Pesaro,* 255 U. S. 216, 219; *Ex parte New York,* 256 U. S. 503, 510; *Compania Espanola* v. *The Navemar, supra,* 74; *Ex parte Peru,* 318 U. S. 578, 588, a practice which seems to have been followed without serious difficulties to the courts or embarrassment to the executive branch of the government. And in *The Exchange,* Chief Justice Marshall introduced the practice, since followed in the federal courts, that their jurisdiction in rem acquired by the judicial seizure of the vessel of a friendly foreign government, will be surrendered on recognition, allowance and certification of the asserted immunity by the political branch of the government charged with the conduct of foreign affairs when its certificate to that effect is presented to the court by the Attorney General. *United States* v. *Lee,* 106 U. S. 196, 209; *Ex parte Muir, supra,* 533; *The Pesaro, supra,* 217; *Compania Espanola* v. *The Navemar, supra,* 74; *Ex parte Peru, supra,* 588. This practice is founded upon the policy recognized both by the Department of State and the courts that the national interests will be best served when controversies growing out of the judicial seizure of vessels of friendly foreign governments are adjusted through diplomatic channels rather than by the compulsion of judicial proceedings. *Compania Espanola* v. *The Navemar, supra; Ex parte Peru, supra.*

In the absence of recognition of the claimed immunity by the political branch of the government, the courts may decide for themselves whether all the requisites of immu-

nity exist. That is to say, it is for them to decide whether the vessel when seized was that of a foreign government and was of a character and operated under conditions entitling it to the immunity in conformity to the principles accepted by the department of the government charged with the conduct of our foreign relations. See *Ex parte Peru, supra,* 588.

Every judicial action exercising or relinquishing jurisdiction over the vessel of a foreign government has its effect upon our relations with that government. Hence it is a guiding principle in determining whether a court should exercise or surrender its jurisdiction in such cases, that the courts should not so act as to embarrass the executive arm in its conduct of foreign affairs. "In such cases the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction." *United States* v. *Lee, supra,* 209; *Ex parte Peru, supra,* 588.

It is therefore not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize.[1] The judicial seizure of the property of a friendly state may be regarded as such an affront to

---

[1] This salutary principle was not followed in *Berizzi Bros. Co.* v. *The Pesaro,* 271 U. S. 562, where the court allowed the immunity, for the first time, to a merchant vessel owned by a foreign government and in its possession and service, although the State Department had declined to recognize the immunity. The propriety of thus extending the immunity where the political branch of the government had refused to act was not considered.

Since the vessel here, although owned by the Mexican Government, was not in its possession and service, we have no occasion to consider the questions presented in the *Berizzi* case. It is enough that we find no persuasive ground for allowing the immunity in this case, an important reason being that the State Department has declined to recognize it.

its dignity and may so affect our relations with it, that it is an accepted rule of substantive law governing the exercise of the jurisdiction of the courts that they accept and follow the executive determination that the vessel shall be treated as immune. *Ex parte Peru, supra,* 588. But recognition by the courts of an immunity upon principles which the political department of government has not sanctioned may be equally embarrassing to it in securing the protection of our national interests and their recognition by other nations.

When such a seizure occurs the friendly foreign government may adopt the procedure of asking the State Department to allow it. But the foreign government may also present its claim of immunity by appearance in the suit and by way of defense to the libel. In such a case the court will inquire whether the ground of immunity is one which it is the established policy of the department to recognize. *Ex parte Muir, supra,* 533; *Compania Espanola* v. *The Navemar, supra,* 74. Such a policy, long and consistently recognized and often certified by the State Department and for that reason acted upon by the courts even when not so certified, is that of allowing the immunity from suit of a vessel in the possession and service of a foreign government.

It has been held below, as in *The Navemar,* to be decisive of the case that the vessel when seized by judicial process was not in the possession and service of the foreign government. Here both courts have found that the Republic of Mexico is the owner of the seized vessel. The State Department has certified that it recognizes such ownership, but it has refrained from certifying that it allows the immunity or recognizes ownership of the vessel without possession by the Mexican government as a ground for immunity. It does not appear that the Department has ever allowed a claim of immunity on that ground, and we are cited to no case in which a federal court

has done so. In *The Davis,* 10 Wall. 15, this Court held that a salvage lien was enforcible against property belonging to but·not in actual possession of the United States, and in this it followed a decision of Judge Story in *United States* v. *Wilder,* Fed. Cas. No. 16,694. And in *The Fidelity,* Fed. Cas. No. 4,758, Chief Justice Waite said of the ruling of *The Davis:* "Property does not necessarily become a part of the sovereignty because it is owned by the sovereign. To make it so it must be devoted to the public use and must be employed in carrying on the operations of the government."

In the case of *The Navemar, supra,* the Spanish Ambassador asserted on behalf of the Spanish Republic that the seized vessel was the property of the Republic, acquired by expropriation from a Spanish National, but the claim of immunity which had not been recognized by our government was rejected by the Court on the ground that the Spanish government was not in possession of the vessel at the time of her arrest.[2]

The lower federal courts have consistently refused to allow claims of immunity based on title of the claimant

---

[2] *The Cristina,* [1938] A. C. 485, in which the immunity was recognized, seems to have proceeded on the ground that the possession taken in behalf of the friendly foreign government was actual. Similarly in *The Arantzazu Mendi,* [1939] A. C. 256, 263, the sovereign was "in fact in possession of the ship." In *The Jupiter,* [1924] P. 236, 241, 244 (cf. *The Jupiter No. 2,* [1925] P. 69; *The Jupiter No. 3,* [1927] P. 122, 125), it appeared that before the suit was brought the master had repudiated the possession and ownership of the plaintiffs and held the vessel for the claimant government. And in *The Porto Alexandre,* [1920] P. 30, 34, the vessel had been requisitioned under the order of the foreign government and on the particular voyage was carrying freight for that government. In *The Annette; The Dora,* [1919] P. 105, 111, an alternative ground of decision was that the sovereign had parted with possession. The Court said: "If it is not in possession, the Court interferes with no sovereign right of the government by arresting the vessel, nor does it, by arresting the vessel, compel the government to submit to the jurisdiction or to abandon its possession."

foreign government without possession, both before *The Navemar, supra, Long* v. *The Tampico,* 16 F. 491, 493, 494 (opinion by Judge Addison Brown); *The Johnson Lighterage Co. No. 24,* 231 F. 365; *The Attualita,* 238 F. 909; *The Carlo Poma,* 259 F. 369, 370, reversed on other grounds, 255 U. S. 219; *The Beaverton,* 273 F. 539, 540; and since, *Ervin* v. *Quintanilla, supra,* 941; *The Uxmal,* 40 F. Supp. 258, 260; *The Katingo Hadjipatera,* 40 F. Supp. 546, 119 F. 2d 1022; *The Ljubica Matkovic,* 49 F. Supp. 936.

Whether this distinction between possession and title may be thought to depend upon the aggravation of the indignity where the interference with the vessel ousts the possession of a foreign state, *Sullivan* v. *Sao Paulo,* 122 F. 2d 355, 360, it is plain that the distinction is supported by the overwhelming weight of authority. More important, and we think controlling in the present circumstances, is the fact that, despite numerous opportunities like the present to recognize immunity from suit of a vessel owned and not possessed by a foreign government, this government has failed to do so. We can only conclude that it is the national policy not to extend the immunity in the manner now suggested, and that it is the duty of the courts, in a matter so intimately associated with our foreign policy and which may profoundly affect it, not to enlarge an immunity to an extent which the government, although often asked, has not seen fit to recognize. We have considered but do not find it necessary to discuss other contentions of petitioner, as they are without merit.

*Affirmed.*

MR. JUSTICE FRANKFURTER, concurring.

In *Berizzi Bros. Co.* v. *The Pesaro,* 271 U. S. 562, this Court held for the first time that "merchant ships owned and operated by a foreign government have the same immunity that warships have." It did so not because the

Department of State by appropriate suggestion or through its established policy had indicated that due regard for our international relations counseled such an abnegation of jurisdiction over government-owned merchantmen. On the contrary. In answer to an inquiry by Judge Mack, before whom the Pesaro's claim to immunity was first raised, the Department of State took this position: "It is the view of the Department that government-owned merchant vessels or vessels under requisition of governments whose flag they fly employed in commerce should not be regarded as entitled to the immunities accorded public vessels of war. The Department has not claimed immunity for American vessels of this character." *The Pesaro,* 277 F. 473, 479–480, note 3; and see 2 Hackworth, Digest of International Law, pp. 429–430, 438–439. Thus, in *Berizzi Bros. Co.* v. *The Pesaro, supra,* this Court felt free to reject the State Department's views on international policy and to formulate its own judgment on what wise international relations demanded. The Court now seems to indicate, however, that when, upon the seizure of a vessel of a foreign government, sovereign immunity is claimed, the issue is whether the vessel "was of a character and operated under conditions entitling it to the immunity in conformity with the principles accepted by the department of the government charged with the conduct of our foreign relations."

If this be an implied recession from the decision in *Berizzi Bros. Co.* v. *The Pesaro,* I heartily welcome it. Adjudication should not borrow trouble by worrying about a case not calling for decision. It is for me not borrowing trouble to raise the relation of the *Pesaro* decision to the situation now before the Court. I appreciate that the disposition of the present case turns on the want of possession by the Republic of Mexico. My difficulty is that "possession" is too tenuous a distinction on the basis of which to differentiate between foreign government-

owned vessels engaged merely in trade that are immune from suit and those that are not. Possession, actual or constructive, is a legal concept full of pitfalls. Even where only private interests are involved the determination of possession, as bankruptcy cases, for instance, abundantly prove, engenders much confusion and conflict. Ascertainment of what constitutes possession or where it is, is too subtle and precarious a task for transfer to a field in which international interests and susceptibilities are involved.

If the Republic of Mexico now saw fit to put one junior naval officer on merchantmen which it owns but are operated by a private agency under arrangements giving that Government a financial interest in the venture, it would, I should suppose, be embarrassing to find that Mexico herself did not intend to be in possession of such ships. And, certainly, the terms of the financial arrangement by which the commercial enterprise before the Court is carried on can readily be varied without much change in substance to manifest a relation to the ship by Mexico which could not easily be deemed to disclose a want of possession by Mexico.

The fact of the matter is that the result in *Berizzi Bros. Co.* v. *The Pesaro, supra,* was reached without submission by the Department of State of its relevant policies in the conduct of our foreign relations and largely on the basis of considerations which have steadily lost whatever validity they may then have had. Compare the overruling of *The Thomas Jefferson,* 10 Wheat. 428 (1825), by *The Genesee Chief,* 12 How. 443 (1851). The views of our State Department against immunity for commercial ships owned by foreign governments have been strongly supported by international conferences, some held after the decision in the *Pesaro* case. See Lord Maugham in *Compania Naviera Vascongado* v. *The Cristina* [1938] A. C. 485, 521–523. But the real change has been the enor-

mous growth, particularly in recent years, of "ordinary merchandising" activity by governments. See *The Western Maid*, 257 U. S. 419, 432. Lord Maugham in the *Cristina* thus put the matter:

"Half a century ago foreign Governments very seldom embarked in trade with ordinary ships, though they not infrequently owned vessels destined for public uses, and in particular hospital vessels, supply ships and surveying or exploring vessels. These were doubtless very strong reasons for extending the privilege long possessed by ships of war to public ships of the nature mentioned; but there has been a very large development of State-owned commercial ships since the Great War, and the question whether the immunity should continue to be given to ordinary trading ships has become acute. Is it consistent with sovereign dignity to acquire a tramp steamer and to compete with ordinary shippers and ship-owners in the markets of the world? Doing so, is it consistent to set up the immunity of a sovereign if, owing to the want of skill of captain and crew, serious damage is caused to the ship of another country? Is it also consistent to refuse to permit proceedings to enforce a right of salvage in respect of services rendered, perhaps at great risk, by the vessel of another country?" [1938] A. C. 485, 521–522.

And so, sensible as I am of the weight to which the decision in the *Pesaro* is entitled, its implications in the light of the important developments in the international scene that twenty years have brought call for its reconsideration. The Department of State, in acting upon views such as those expressed by Lord Maugham, should no longer be embarrassed by having the decision in the *Pesaro* remain unquestioned, and the lower courts should be relieved from the duty of drawing distinctions that are too nice to draw.

It is my view, in short, that courts should not disclaim jurisdiction which otherwise belongs to them in relation

to vessels owned by foreign governments however operated except when "the department of the government charged with the conduct of our foreign relations," or of course Congress, explicitly asserts that the proper conduct of these relations calls for judicial abstention. Thereby responsibility for the conduct of our foreign relations will be placed where power lies. And unless constrained by the established policy of our State Department, courts will best discharge their responsibility by enforcement of the regular judicial processes.

MR. JUSTICE BLACK joins in this opinion.