F. W. Stone Engineering Company, Appellant, *v.*
Petroleos Mexicanos.

Argued March 22, 1945. Before Maxey, C. J., Drew,
Linn, Stern, Patterson and Jones, JJ.

*Lee C. McCandless,* with him *Marshall & McCandless* and *James E. Marshall,* for appellant.

*J. Campbell Brandon,* with him *W. D. Brandon* and *Hardin, Hess & Eder,* for appellee.

OPINION BY MR. JUSTICE JONES, April 13, 1945:

The question in this case is whether the State Department's recognition of the defendant corporation as a governmental instrumentality of the Republic of Mexico, with an attendant right to sovereign immunity, required the court below to release property of the defendant from the grasp of the court's process, viz., a writ of foreign attachment issued by the plaintiff against funds of the defendant on deposit in a local bank. The learned judge of the court below thought that it did and, accordingly, entered an order dissolving the writ, from which the plaintiff appeals.

By an agreement entered into November 16, 1938, the plaintiff, an Ohio corporation, agreed to supply, according to specifications, the equipment and materials necessary for the construction by the defendant, under the plaintiff's supervision, of a manufacturing plant in Mexico for the defendant's use. On December 7, 1938, the parties to the construction agreement, together with the Butler County National Bank & Trust Company, of Butler, Pennsylvania, entered into an escrow agreement. By the terms of that agreement the defendant was required to deposit with the bank, as escrow agent, the sum of $125,000 to secure payment to the plaintiff of the sums due for the purchase of the equipment and materials necessary for the construction of the defendant's plant under the contract. The escrow agreement provided that the last $50,000 of the money so deposited was

not to be paid to the plaintiff until certification by the latter to the escrow agent that all of the terms of the construction contract had been complied with and a like certification by the defendant that the completed plant fulfilled the specifications and requirements of the contract. All but $25,000 of the money deposited in escrow had been paid to the plaintiff by August 18, 1944. On that date, the plaintiff, claiming to have complied with all of the terms of the construction contract and having so certified to the escrow agent, caused the balance on deposit to be attached by virtue of a writ of foreign attachment issued out of the court below against the defendant and summoning the depositary bank as garnishee. The issue here involved is unrelated to any controversy as to the plaintiff's performance of the construction contract. The sole question is whether the court below had jurisdiction to entertain the attachment proceeding in view of the following admitted or undenied facts.

On October 2, 1944, the Mexican Charge d'Affairs ad interim addressed a communication to the Honorable Cordell Hull, Secretary of State, informing him of the attachment involved in this case and requesting that the court "be apprised of the immunity of *Petroleos Mexicanos* and of its funds from suit and attachment". As a basis for the claim of immunity, the communication set forth that Petroleos Mexicanos is "an instrumentality of the Mexican Government"; is wholly owned and controlled by that Government; and that it had been incorporated and organized on June 7, 1938, as a "public institution" by decree of the Congress of the Mexican United States for the purpose of operating and developing oil properties in Mexico which the government of that country had expropriated a few months earlier. After twenty per cent of the profits from the corporation's operations had been set aside as contingent reserves, seventy-five per cent of the balance was to be paid to the Mexican Government and twenty-five per cent

to the corporation's "workers". The communication and attached documents set forth further matters which show the public character and purpose of Petroleos Mexicanos, but, with that, we need not be concerned. The matter of present importance is the action taken by the Secretary of State and not its merit.

As a result of the communication from the Mexican Charge d'Affairs, Secretary Hull on October 4, 1944, addressed a letter to the Honorable Francis Biddle, Attorney General of the United States, which, in part here material, reads as follows: "The [State] Department accepts as true the statements made by the Charge d'Affairs ad interim of Mexico that the defendant, Petroleos Mexicanos, is a public agency or instrumentality of the sovereign state of Mexico; and I may add that it has heretofore been recognized as such by this Government.[1] Consequently, this Government recognizes and allows the claim of the Government of Mexico that Petroleos Mexicanos is immune from suit and its property from attachment.

"I shall appreciate your taking such steps as may be necessary to present to the Court of Common Pleas of Butler County an appropriate suggestion in the matter."

Thereupon, the Attorney General by letter of October 7, 1944, directed the United States Attorney at Pittsburgh to take the necessary steps to present the defendant's claim of immunity to the court below in this proceeding; and, on October 11, 1944, the United States Attorney filed the information and suggestion of immunity on the basis whereof the learned judge of the court below thereafter dissolved the writ of attachment as already stated.

---

[1] Conformably to the State Department's prior recognition of Petroleos Mexicanos as a governmental instrumentality of a friendly foreign power, the Treasury Department had twice ruled that Petroleos Mexicanos was exempt from taxation under the laws of the United States.

When the Department of State makes known its determination with respect to political matters growing out of or incidental to our Government's relations with a friendly foreign state, it is the duty of the courts to abide by the status so indicated or created and to refrain from making independent inquiries into the merit of the State Department's determination or from taking any steps that might prove embarrassing to the Government in the handling of its foreign relations. See *Republic of Mexico v. Hoffman,* 324 U. S. 30; *Ex Parte Republic of Peru,* 318 U. S. 578, 588-589; *The Maret,* 145 F. 2d 431, 440 (C. C. A. 3); *Sullivan v. State of Sao Paulo,* 122 F. 2d 355, 357-358 (C. C. A. 2).

As stated by Mr. Chief Justice STONE in *Ex Parte Republic of Peru,* supra, at p. 588, the " * * * principle is that courts may not so exercise their jurisdiction, by the seizure and detention of the property of a friendly sovereign, as to embarrass the executive arm of the Government in conducting foreign relations. 'In such cases the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction' ". Again, from the same authority at p. 589,—"This practice is founded upon the policy, recognized both by the Department of State and the courts, that our national interest will be better served in such cases if the wrongs to suitors, involving our relations with a friendly foreign power, are righted through diplomatic negotiations rather than by the compulsions of judicial proceedings". Nor is the constitutional power of the executive branch of the national government in the field of foreign relations " * * * limited to a determination of the government to be recognized. It includes the power to determine the policy which is to govern the question of recognition": *United States v. Pink,* 315 U. S. 203, 229.

Such being the Department's province, the Secretary of State, in furtherance of our Government's friendly

relations with the Republic of Mexico, formally recognized the defendant as a governmental instrumentality of that power and, as such, entitled to sovereign immunity in a court in the United States. It is irrelevant here that the foreign instrumentality conducts a commercial enterprise which, it was contemplated, would show a profit. Even if that had present relevancy, the enterprise was for the development of the trade and commerce of the foreign government and to supply revenues for its treasury,—appropriate concerns of that government: cf. *Berizzi Brothers Company v. Steamship Pesaro,* 271 U. S. 562, 574. Nor is it of any significance that the governmental instrumentality is a separate corporation. A determination by the Secretary of State with respect to the status of such instrumentalities is as binding upon the courts of this country as is his determination with respect to a foreign government itself. Cf. *United States v. Pink,* supra, at p. 229, and *The Maret,* supra, at p. 442.

Concluding, as we do, that the goods and property of the defendant in the instant case are immune from seizure or detention under process issuing out of a court of this State, but one question remains and that is whether the defendant's right to immunity was waived. The learned judge of the court below was unable to find any waiver; and, likewise, neither can we, either in the construction contract, the escrow agreement or elsewhere in the record now before us. On the other hand, the Mexican Government, the creator and beneficiary of the instrumentality, seasonably made claim of immunity in the defendant's behalf before the Department of State which at once acknowledged the right and promptly caused the court below to be informed accordingly.

What was said in *Ex Parte Republic of Peru,* supra, at p. 589, is both apposite and controlling here: "The [State] Department has allowed the claim of immunity and caused its action to be certified to the * * * court through the appropriate channels. The certification and

the request that the [property] be declared immune must be accepted by the courts as a conclusive determination by the political arm of the Government that the continued retention of the [property] interferes with the proper conduct of our foreign relations. Upon the submission of this certification to the * * * court, it became the court's duty, in conformity to established principles, to release the [property] and to proceed no further in the cause". The learned judge of the court below faithfully observed that injunction.

The order appealed from is affirmed.