**THE BEATON PARK.**

No. 14724.

District Court, W. D. Washington, N. D.

March 30, 1946.

Sam L. Levinson, of Seattle, Wash., for libelant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., for respondent United States.

Lane Summers and Merritt, Summers, Bucey & Stafford, all of Seattle, Wash., for Dominion of Canada.

Stanley B. Long, Edward S. Franklin, and Bogle, Bogle & Gates, all of Seattle, Wash., for respondents Moran Towing & Transp. Co., Inc., and Williams, Dimond & Co.

BOWEN, District Judge.

The Court denies the claim of sovereign immunity in this case primarily because the Canadian Government's interest in this transaction was not anything other than an indirect interest in the ordinary commercial operation of a merchant vessel owned but not possessed by that Government. The commercial operation was not by the Canadian Government itself, but by a corporation operating agent whose capital stock is owned by the Canadian Government.

█ █ In this country our theory as to government in business is that when our Government enters upon an ordinary commercial business undertaking, such as operating merchant ships, it does so under the same liabilities and responsibilities as private individuals when they engage in the same kind of business; and Congress has given consent for the institution of legal actions by those aggrieved for the enforcement of such liabilities of the Government. In respect to merchant ship operations, we do not recognize the Government as having immunity from suit.

█ Here it was not a government function that was being pursued. It was merely an ordinary commercial operation of a merchant ship owned but not possessed or operated by the foreign government, whereas in Ervin v. Quintanilla, 5 Cir., 99 F.2d 935, and in The Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088, the vessel was both owned and possessed by the foreign government. In the absence of statute or treaty, no sound principle of law or of international comity requires that the courts of this country treat a foreign government more favorably as to sovereign immunity than our own Government is treated by the courts.

In this case libelant, who was a seaman on the M/V Mobile Point on December 22, 1944, when there was a collision between that vessel and the respondents' S.S. Beaton Park, brings this action against the S.S. Beaton Park, her owners and operators, and against the United States of America and others for damages for personal injuries alleged to have been caused by the joint negligence of all of the respondents. The Attorney General of the United States, under date of March 13, 1946, has suggested

"* * * It is our understanding that the State Department has advised the Canadian Embassy that the claim of sovereign immunity would not be allowed, and has pointed out that the Canadian Government is at liberty to present its own petition to the court.

"The position of the United States Government is due to the fact that the War Shipping Administration has a substantial claim against the Beaton Park and owners for the total loss, by collision, of the War Shipping Administration Tugboat Mobile Point. The United States Government is not prepared to prejudice that claim by recognizing or allowing any claim of sovereign immunity for the Beaton Park.

"It is quite true that negotiations for a mutual waiver of maritime claims have been in progress between the United States and the Canadian Governments. The form of the proposals may not at this time be discussed. * * *"

In Republic of Mexico v. Hoffman, 324 U.S. 30, 34-36, 38, 65 S.Ct. 530, 532, it is said that

"In the absence of recognition of the claimed immunity by the political branch of the government, the courts may decide for themselves whether all the requisites of immunity exist. That is to say, it is for them to decide whether the vessel when seized was that of a foreign government and was of a character and operated under conditions entitling it to the immunity in conformity to the principles accepted by the department of the government charged with the conduct of our foreign relations.' (Citing.)

*    *    *    *    *    *

"It is therefore not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize. The judicial seizure of the property of a friendly state may be regarded as such an affront to its dignity and may so affect our relations with it, that it is an accepted rule of substantive law governing the exercise of the jurisdiction of the courts that * * * the vessel shall be treated as immune. (Citing.) But recognition by the courts of an immunity upon principles which the political

department of government has not sanctioned may be equally embarrassing to it in securing the protection of our national interests and their recognition by other nations.

\* \* \* \* \* \*

"We can only conclude \* \* \* that it is the duty of the courts, in a matter so intimately associated with our foreign policy and which may profoundly affect it, not to enlarge an immunity to an extent which the government, although often asked, has not seen fit to recognize."

The Court is of the opinion not only that sovereign immunity has not before been extended to a situation like this, but also that granting such immunity in this case might seriously affect and embarrass the Government of the United States in its foreign relations with the Dominion of Canada. I do not think the principle of sovereign immunity should be extended to the facts in this case.