**OCEAN TRANSPORT COMPANY, Inc.,**
**Plaintiff,**

v.

**The GOVERNMENT OF the REPUBLIC OF the IVORY COAST and the FISHING VESSEL PRESIDENT KENNEDY, Defendant.**

**No. 67–99.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 23, 1967.

Joaquin Campoy, New Orleans, La., for plaintiff.

Carl J. Schumacher, Jr., New Orleans, La., for defendant.

CASSIBRY, District Judge.

This cause came on for hearing on April 19, 1967 on motion of defendant to dismiss.

Ocean Transport Company, Inc., a Louisiana corporation, has sued the Government of the Republic of the Ivory Coast,

a sovereign nation, and the Fishing Vessel, President Kennedy, for breach of contract, civil and maritime. The President Kennedy is a tuna and sardine fishing boat, constructed in the United States, the ownership of which was acquired by the Republic of the Ivory Coast from the United States of America through the Agency for International Development (A.I.D.) pursuant to the Foreign Assistance Act of 1961. The Republic of the Ivory Coast intends to use the President Kennedy to train and educate its Nationals to become fishermen.

In August 1966, plaintiff entered into negotiations with representatives of defendant, acting through A.I.D., which culminated in a contract effective December 10, 1966. Under the terms of the contract, defendant was to deliver the vessel to plaintiff in a seaworthy condition fully found and ready for sea and, upon delivery of the vessel, plaintiff would be obligated to place a crew on board and deliver the vessel to Abidjan, Ivory Coast. The contract further provided that upon delivery of the vessel to the defendant at Abidjan, defendant would have paid the plaintiff the total sum of $23,000.00, plus $215.00 for each day, or portion thereof, that the voyage might be delayed by reason of the vessel having to put into a port for major repairs or alterations. To make certain that funds would be available to discharge defendant's obligations to pay plaintiff the agreed upon contract price for delivery of the vessel to Abidjan, defendant, on or about November 29, 1966, deposited the sum of $23,000.00 in the Hibernia National Bank in New Orleans in the form of a letter of authorization to disburse portions of said funds to plaintiff prior to, and at various stages of the contemplated voyage. At the time suit was filed, sums totalling $10,000.00 had been disbursed to the plaintiff. The vessel was finally delivered to the plaintiff who placed a crew aboard and the ship duly sailed for Abidjan. On January 15, 1967, enroute to the Republic of the Ivory Coast, the Master of the vessel discovered that the ship was unstable and unseaworthy. As a result, he felt constrained to put in to Key West, Florida for the safety of the crew and the vessel. The vessel has remained in Key West since that date. Defendant refused to authorize any further disbursement of funds and, as a consequence, plaintiff has filed this suit alleging breach of contract. To obtain jurisdiction and assure payment of at least a portion of his alleged losses, plaintiff has filed this suit *in personam* against the Republic of the Ivory Coast and *in rem* against the vessel and has obtained a writ of attachment on the balance of the contract funds now in the Hibernia National Bank of New Orleans.

Defendant has moved to dismiss the action in its entirety on the grounds that the Republic of the Ivory Coast as a sovereign nation, is immune to suit. The State Department of the United States has declined the Republic of the Ivory Coast's request for immunity, saying that it does so because the contract at issue is of a "private" nature. (*jure gestionis*) [1]

1. The State Department responded to a letter written to them by plaintiff as follows:

"The Department refers to your letter of March 2, 1967, in reply to its letter of February 20, 1967, concerning the case of Ocean Transport Company, Inc. v. The Government of the Republic of the Ivory Coast and the Fishing Vessel President Kennedy, Docket No. 67–99–E, United States District Court, Eastern District of Louisiana.

The Department is informing the Embassy of the Republic of the Ivory Coast that it must decline its request for recognition of sovereign immunity from suit in the above case because in the Department's view the contract out of which the present action against the Government of the Republic of the Ivory Coast arises and in which the defendant government contracted for the services of a private company for the transportation of the fishing vessel President Kennedy and its delivery in Abidjan is of a private nature (jure gestionis) and, therefore, not entitled to immunity under the restrictive theory of sovereign immunity which the Department follows."

■ Absolute sovereign immunity became firmly established in the United States in 1812 with The Schooner Exchange v. McFaddon.[2] Courts have generally considered that sovereign immunity was a political or diplomatic problem, more than a legal one, and have deferred to the State Department's judgment in these cases to avoid possible embarrassment to those responsible for the Nation's foreign policy.[3] The Supreme Court has said, "It is therefore not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize." [4]

The United States Court of Appeals for the Second Circuit has construed the *Republic of Mexico* case to mean, "that the courts should deny immunity where the State Department has indicated, either directly or indirectly that immunity need not be accorded." [5] Judge Smith felt that it made no sense to deny a litigant a deserved day in court if the suit did not embarrass the State Department.

In any event, many nations around the world relaxed the absolute rule to one more in tune with the times. The United States State Department, in the "Tate Letter," [6] in 1952, broadly pronounced against granting sovereign immunity for commercial or private activities of foreign governments and outlined a policy to follow the newer or restrictive theory, whereby immunity is recognized with respect to sovereign or public acts (*jure imperii*) of a State but not with regard to the private acts (*jure gestionis*). One difficulty with the "Tate Letter," however, is that it sets forth no criteria by which we may determine the difference between public and private acts.[7] Additionally, the restrictive doctrine was made illusory when the State Department announced that absolute immunity still applied in cases of proposed attachment or seizure of a foreign state's property. The new policy was of little value since in most cases, jurisdiction could only be perfected by attachment. 54 Mich.L.Rev. 1008, 1010 (1956). Fortunately, this defect was cured by a subsequent letter issued in 1959 by the State Department over the name of Loftin Becker, legal advisor to the State Department.[8]

■ Since the State Department has declined to recommend immunity, and since jurisdiction has been obtained by the attachment of defendant's property, we are only required to decide whether the instant act was one of a public or private nature. While I may not be bound by the State Department's finding that the contractual transaction involved in this case was private rather than public, it is highly persuasive and the authorities dictate that it must be given great weight. Additionally, I am inclined to apply the formula set forth by Judge Smith in the *Victory* case to determine whether this act is private or public. Judge Smith's suggested criteria are well reasoned and, when applied, it is clear that the act involved was not of a public nature and thus the Republic of the Ivory Coast would not be

2. 7 Cranch 116, 3 L.Ed. 287 (U.S. 1812).

3. National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955); Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1942).

4. Republic of Mexico v. Hoffman, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729.

5. Victory Transport, Inc. v. Comisaria General, 336 F.2d 354 (2 Cir. 1964).

6. 26 Dept. of State Bull. 984 (1952).

7. See Victory Transport, 336 F.2d p. 359, 60 Mich.L.Rev. 1142, 1147 (1962).

8. " * * * where under International Law a foreign government is not immune from suit, attachment of its property for the purpose of obtaining jurisdiction is not prohibited. In many cases, jurisdiction could probably not be obtained otherwise."

entitled to immunity.[9] Whether plaintiff would be permitted to execute upon the defendant's attached property to satisfy a judgment need not be decided at this time.

The defendant's motion to dismiss is therefore, denied.

---

9. Judge Smith held that unless the act fell into one of the following categories, sovereign immunity should not be available:

    (1) Internal administrative acts, such as expulsion of an alien.

    (2) Legislative acts, such as nationalization.

    (3) Acts concerning the armed forces.

    (4) Acts concerning diplomatic activity.

    (5) Public loans.