The ANACONDA COMPANY et al.,
Plaintiffs,

v.

CORPORACION DEL COBRE and Corporacion De Fomento De La Produccion, Defendants.

No. 72 Civ. 878.

United States District Court,
S. D. New York.

March 23, 1972.

Chadbourne, Parke, Whiteside & Wolff, New York City, for plaintiffs; Donald L. Deming, Edward C. McLean, Jr., Chester J. Hinshaw, Steven L. Cohen, and Marcia E. Carpeni, New York City, of counsel.

Rabinowitz, Boudin & Standard, New York City, for defendants; Victor Rabinowitz, Dorian Bowman, Michael Krinsky and K. Randlett Walster, New York City, of counsel.

METZNER, District Judge:

This is a motion to vacate an order of attachment issued in an action to recover on a series of promissory notes in the amount of some $12,000,000. In addition, recovery is sought for interest due on other notes. The dispute arises from the contention of the defendants that the nationalization of the Chilean copper mines precludes payment.

The plaintiffs, Chile Exploration Co. ("Chilex") and Andes Copper Mining Co. ("Andes"), are incorporated in the States of New Jersey and Delaware, respectively, and are licensed to do business in the State of New York. They were the owners of copper mining property in the Republic of Chile. In the latter part of 1969, Chilex and Andes transferred all of their assets and liabilities to two separate Chilean corporations. The plaintiffs then sold 51% of the stock in these Chilean corporations to defendant Corporacion del Cobre ("Codelco") for $175,000,000. Codelco paid for the stock with a series of notes guaranteed by defendant Corporacion de Fomento de la Produccion ("Corfo"). Both Codelco and Corfo are alleged to be public corporations organized under the laws of Chile and doing business in the State of New York.

The plaintiff, Anaconda Co., is a Montana corporation licensed to do business in the State of New York and is presently the holder of certain of the notes.

The defendants have made this motion prior to appearance claiming that they are entitled to sovereign immunity from attachment, that plaintiffs have already submitted their claims to the Chilean courts for resolution, and that the attachment should be vacated in the exercise of sound discretion.

Affidavits have been submitted on behalf of the defendants by the Chilean ambassador to the United States, the manager of the New York office of Corfo, and a Chilean attorney who is also an assistant professor of international law at the University of Chile in Santiago. The purport of these affidavits is to support the defendants' contentions that they are organic parts of the Chilean state, that they were created to, and do, carry out governmental or public functions (*jure imperii*), not private proprietary functions (*jure gestionis*), and that their employees are considered governmental employees.

The affidavits submitted by the plaintiffs in opposition to the motion are in sharp conflict with defendants' claim that the defense of sovereign immunity is available to them.

 The purpose of an attachment is to acquire jurisdiction over a defendant or to secure the enforcement of an eventual judgment in favor of the plaintiff. The thrust of the instant motion goes solely to the first purpose. The motion to vacate has been made before the defendants have appeared in the action, and the lack of necessity for an attachment to secure the plaintiffs is not reviewable at this time. CPLR § 6223.

 The affidavit of the Chilean ambassador is only a vehicle for raising the issue of sovereign immunity. It is not determinative of that issue. Restatement 2d, Foreign Relations Law of the United States, §§ 71(b) & 72. Our State Department has not filed a suggestion of immunity, which, if filed, would require the vacatur of the attachment. Republic of Mexico v. Hoffman, 324 U.S. 30, 35, 65 S.Ct. 530, 89 L.Ed. 729 (1945). Absent such a suggestion, the question of the existence of sovereign immunity calls for a judicial determination. Victory Transport, Inc. v. Comisaria General, 336 F.2d 354, 360 (2d Cir. 1964).

Whether sovereign immunity exists depends on differentiations between acts which are *jure imperii* and those which are *jure gestionis*. *Victory Transport, supra.* § 66 of Restatement 2d, *supra,* states that immunity of a foreign state extends to "(g) a corporation created under its laws and exercising functions comparable to those of an agency of the state." The comment indicates that "agency" means "a body having the nature of a government department or ministry." The reporters' notes state that great weight should be given to the fact that the foreign state considers the corporation to be performing the functions of a governmental agency (a factor favorable to defendants here) and the fact that the corporation can be sued in the state of its creation (a factor favorable to plaintiffs here).

In addition to the opposing affidavits, there are several facts found in the moving papers and the notes themselves which negative this claim of sovereign immunity. For example, if immunity attaches to the defendant corporations because they are agencies of the government of Chile, it would appear that it would not be necessary for them to join the government as a party to a proceeding in the Chilean court to void these promissory notes.

The notes by their terms were delivered to Andes and Chilex in New York. Interest and principal payments were to be paid in United States currency at the principal office of the First National City Bank in New York City. Each note was to "be performed in accordance with the internal laws of the State of New York, with regard to its delivery, transfer and payment. . . ." The office in New York of Codelco, the maker of the notes, "shall be deemed to be the domicile of the Corporation for all purposes related to the compliance of this Note."

It is inconceivable that a government or its agency would consent to be considered a domiciliary of a foreign state. Such action is not consistent with a status of *jure imperii.*

In *Victory Transport, supra,* the court indicated that even absent a State Department suggestion of immunity the courts should find as a political or public act "legislative acts, such as nationalization." Defendants urge that such is the case here.

The nationalization occurred in July 1971, while the notes were issued in 1969. The nationalization, from the information made available to the court, called for a transfer to the Chilean state of the assets of the two corporations in which the defendants had a 51% interest. I gather that Codelco is now responsible for the operation and management of the mines. I find that Codelco's prior obligations were not affected by the nationalization and that it was not the intention of the nationalization to do so. The compensation to be paid under

the nationalization to Andes or Chilex could only embrace their 49% interest in the Chilean corporations. That is all they owned at the time.

 After reviewing the affidavits, documents and authorities submitted on this motion, I find that the claim of sovereign immunity must be rejected as a basis for vacating the order of attachment.

The second ground urged by the defendants to vacate the order is that plaintiffs have already submitted their claims to a special Chilean court which is now considering the matter in Santiago, and that an attachment should not be issued while the matter is *sub judice* there.

 According to defendants' expert, the nationalization act empowered the Comptroller General to determine the indemnification to which the mining companies would be entitled. Roughly, this would be the value of the mines less excess profits taxes to be subsequently assessed by the President of Chile (in this case on September 28, 1971), the rights to mineral deposits and the value of the property in poor condition. I am not sure what the last item of deduction means, since I would assume that the value first fixed by the Comptroller General would reflect the condition of the property. In any event, a dissatisfied owner could appeal the determination of the Comptroller General to a court specially created for that purpose.

The Comptroller General, in applying the above formula to the properties in which Andes and Chilex had an interest, found "a negative sum." I gather that the owners owe the government money for having their assets confiscated. It certainly provides an interesting source of set-off against any claims by those owners arising outside of the nationalization scheme. The plaintiffs took an appeal to the special court on December 4, 1971, as was their right under the law. Codelco then joined the government as a party (see p. 18, *supra*) to the proceedings. Together they opposed plaintiffs' appeal and also raised an issue as to any obligation to pay the notes involved in the instant case. They further claimed that if there is an obligation to pay, it can only be satisfied out of the compensation which may be found owing under the nationalization act.

From these facts furnished by defendants, it is impossible to comprehend how defendants can seriously contend that "the plaintiffs have submitted their claims to a special Chilean court."

Finally, the defendants urge the court to vacate the order in the exercise of discretion.

 The first ground which they say calls for the exercise of the court's discretion is a ridiculous one: Since the plaintiffs may ultimately have a claim for over $100,000,000, the attachment of a mere $2,000,000 at this time really will not afford the plaintiffs much relief and therefore the restraint should be removed.

They next argue that this attachment will damage trade between Chile and the United States and the latter's adverse balance of trade. If this be so, I must assume that the court would have had some indication from the State Department of its views, since it must be aware of this litigation.

 Lastly, it is urged that the existence of this attachment will have a disastrous effect of the Chilean economy. The affidavit containing this argument, however, is careful to use such limiting phrases as "may seriously interfere with normal production" and "at least production cut down." From these vague hypotheticals, the conclusion is affirmatively and strongly drawn in the affidavit that the people of Chile will suffer from lack of food, clothing and other necessities of life.

No one, of course, wants to see a whole nation starve to death, but it is impossible to believe, on the papers sub-

mitted, that such an event will come to pass because of the existence of this attachment.

The motion is denied. The temporary stay granted defendants of further levies under existing attachments is vacated.

So ordered.