**NEW YORK AND CUBA MAIL STEAM-SHIP COMPANY, owner of steamship VIRGINIA CITY VICTORY, Libellant,**

v.

**REPUBLIC OF KOREA, Respondent.**

United States District Court
S. D. New York.
July 13, 1955.

Burlingham, Hupper & Kennedy, New York City, Eugene Underwood and Richard W. Palmer, New York City, of counsel, for libellant.

Maxwell T. Cohen, New York City, for respondent, appearing specially.

WEINFELD, District Judge.

On filing this suit in admiralty to recover for damages sustained by libellant's steamship, process in personam

with writ of foreign attachment issued [1] pursuant to which respondent's funds on deposit in New York banks were attached.

The respondent, Republic of Korea, appearing specially, moves to vacate the attachment and to dismiss the libel on the ground that as a recognized sovereign and independent state it is immune from suit.

The libel alleges that on April 18, 1951 libellant's ship, The Virginia City Victory, which had unloaded a cargo of rice at the port of Pusan, Korea, was damaged by respondent's lighter which had assisted in the unloading operation. The respondent alleges that the cargo of rice had been acquired by it—not for sale, resale, barter or exchange—but for free distribution to its civilian population and military personnel in Korea.

Libellant commenced an earlier suit on the same claim and effected personal service of process on respondent's Consul General in New York. A motion to dismiss the prior suit was made based upon the affidavit of the Consul General who, though asserting sovereign immunity on behalf of his government, also stated that in any event he was not authorized to accept service of process on its behalf. The libellant appeared but did not oppose the motion and accordingly the suit was dismissed. It is obvious that this disposition in nowise determined the claim of sovereign immunity and the respondent's contention that the dismissal is res judicata is without merit.

Following the attachment of the bank accounts in the pending suit the Korean Ambassador made formal representation to the Secretary of State of the United States requesting the assistance of the State Department in establishing the immunity of the Republic of Korea from suit, and of its funds from attachment. On this motion the United States Attorney for the Southern District of New York, acting under the direction of the Attorney General, has filed a suggestion with the Court. Attached to the suggestion are copies of the Ambassador's communication to the Secretary of State and the latter's letter to the Attorney General setting forth the Department's position.

Since the suggestion filed with the Court restates the State Department position in practically the same language as that contained in its letter to the Attorney General, the following quotation therefrom is appropriate for consideration of the issue posed on this application:

"The letter from the Secretary of State of the United States to the Attorney General of the United States recognizes that under international law property of a foreign government is immune from attachment and seizure, and that the principle is not affected by a letter dated May 19, 1952, from the Acting Legal Adviser to the Department of State to the Acting Attorney General of the United States, in which the Department of State indicated its intention to be governed by the restrictive theory of sovereign immunity in disposing of requests from foreign governments that immunity from suit be suggested in individual cases. The Department of State accordingly has requested that a copy of the note of the Ambassador of Korea be presented to the Court and that the Court be informed of the Department of State's agreement with the contention of the Ambassador that property of the Republic of Korea is not subject to attachment in the United States.

"The Department of State, however, has not requested that an appropriate suggestion of immunity be filed, inasmuch as the particular acts out of which the cause of action arose are not shown to be of purely governmental character."

Thus the State Department has taken a direct and unequivocal position with respect to the Republic of Korea's claim that its funds are immune from attach-

**1.** Supreme Court Admiralty Rule No. 2, 28 U.S.C.A.

ment, but has declined to make the requested suggestion of immunity from suit, asserting that upon the facts as presented it does not appear the claim rests upon acts of a purely governmental character.

It is therefore not surprising that the parties are in sharp disagreement as to the effect which the Court should give to the suggestion. The libellant insists that the suggestion is an outright rejection of the claim of immunity and that the statement in it that the property of a foreign sovereign is not subject to attachment and seizure is not only gratuitous but an intrusion on the judicial function. The respondent, on the other hand, argues that the funds are immune from attachment generally, and specifically so because they were used and required by it in the United States for public and governmental purposes; further that it may not be sued in our courts without its consent; and finally it urges that even under the new policy of the State Department whereby the rule of absolute sovereign immunity was relaxed in favor of the newer or restrictive theory of sovereign immunity with respect to private acts or commercial transactions,[2] it is still entitled to exemption from suit since the acts on which the libellant founds its claims were public and governmental—that the distribution of rice during the war period to its military and civilian personnel was a governmental function involving the safety and preservation of the nation and the well-being of its people.

█ It must be recognized that primarily the claim by a foreign sovereign of immunity from suit or process presents a political rather than a judicial question. This is necessarily so, for dealings between our own and a friendly foreign government are carried on through diplomatic channels by those officials to whom the matters are committed. Lest an untoward incident disturb amicable relations between the two sovereigns, it has long been established that the Court's proper function is to enforce the political decisions of our Department of State on such matters. This course entails no abrogation of judicial power; it is a self-imposed restraint to avoid embarrassment of the executive in the conduct of foreign affairs.[3]

█ The suggestion before me states explicitly that the principle of the immunity of a foreign government's property from attachment and seizure is not affected by the State Department's favorable attitude towards the restrictive theory of sovereign immunity, and that the Department is in agreement with the respondent's contention that its property "is not subject to attachment in the United States." Thus by its own interpretation of its liberal policy against unrestricted immunity, the Department of State declares in unmistakable language that it adheres to the doctrine that the property of a foreign government is immune from attachment.[4] Indeed the principle is so well established that but for the letter of May 19, 1952 its applicability here could hardly be open to doubt. To borrow a phrase, "Deposits may be the life-blood necessary for national existence."[5] Any vestige of doubt is dispelled by the State Department's suggestion filed with the Court "as a matter of comity between the Government of the United States and the Government

2. 26 Dept.St.Bull. 984, June 23, 1952.

3. Republic of Mexico v. Hoffman, 324 U. S. 30, 35, 65 S.Ct. 530, 89 L.Ed. 729; Ex parte Republic of Peru, 318 U.S. 578, 588, 63 S.Ct. 793, 87 L.Ed. 1014; Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726; Doe ex dem. Clark v. Braden, 16 How. 635, 657, 14 L.Ed. 1090.

4. Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Berizzi Brothers Company v. Steamship Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088.

5. Dissenting opinion, Mr. Justice Reed, National City Bank of New York v. Republic of China, 348 U.S. 356, 372, 75 S.Ct. 423, 433.

of the Republic of Korea." Under the circumstances, the Court's indicated course is succinctly stated by Mr. Chief Justice Stone: "[C]ourts may not so exercise their jurisdiction, by the seizure and detention of the property of a friendly sovereign, as to embarrass the executive arm of the government in conducting foreign relations * * *. Upon recognition and allowance of the claim by the State Department and certification of its action presented to the court by the Attorney General, it is the court's duty to surrender the vessel and remit the libellant to the relief obtainable through diplomatic negotiations. * * * The certification and the request that the vessel be declared immune must be accepted by the courts as a conclusive determination by the political arm of the Government that the continued retention of the vessel interferes with the proper conduct of our foreign relations. Upon the submission of this certification to the district court, it became the court's duty, in conformity to established principles, to release the vessel and to proceed no further in the cause."[6]

Accordingly there is no alternative to the vacatur of the attachment.[7] I find nothing in Sullivan v. State of San Paulo, 2 Cir., 122 F.2d 355, relied upon by libellant, which requires the Court to uphold the attachment in the face of the unambiguous position of the Department of State on the issue of immunity from attachment. On the contrary, it reaffirms the general principles by which the Court has reached its conclusion.

Since jurisdiction here rests on the seizure under the writ of attachment, the lifting of the attachment makes it unnecessary for the Court to decide the interesting question of whether the Republic of Korea would otherwise be entitled to immunity from suit even under the restrictive theory. Likewise, I do not pass upon the libellant's contention that since the State Department declined to suggest immunity from suit following representations made by the Korean Ambassador, the respondent may not now be heard to contest before the Court the Department's ruling on this issue.

The motion to vacate the attachment is granted.

Settle order on notice.

---

6. Ex parte Republic of Peru, 318 U.S. 578, 588–589, 63 S.Ct. 793, 799, 87 L.Ed. 1014.

7. It may be urged that the restrictive theory of sovereign immunity is illusory since in many instances jurisdiction can only be acquired by attachment of funds or property on the filing of suit. Indeed, libellant urges there is a manifest contradiction in the State Department's position that the Republic of Korea's funds are immune from attachment although not immune from suit.

The short answer is that even in those instances where jurisdiction is obtained other than by attachment there is no assurance of the collection of any judgment that may be obtained against the foreign state. See Brandon, Sovereign Immunity of Government-Owned Corporations and Ships, 39 Cornell L.Q. 425 (1954); Dexter & Carpenter v. Kunglig Jarnvagsstyrelsen, 2 Cir., 43 F.2d 705. Whether in the light of the relaxation of the absolute theory of sovereign immunity a distinction should now be made between seizure of property necessary to vest jurisdiction and seizure of property under execution to enforce collection of a judgment, where jurisdiction has been previously acquired without attachment or seizure, need not be decided at this time. A distinction might be urged on the ground that in the instance where attachment is necessary to vest jurisdiction, the basic issues are still unresolved, whereas in the instance of jurisdiction already acquired the Court has passed on all issues including whether or not the claim rests upon acts of a private rather than a public character.