Jacob Markowitz, J.
This is an application for a warrant based upon a commercial contract for the plaintiff partnership to purchase 2,000,000 pounds of frozen shrimp annually from the Department of Fisheries of the defendant for consumption in the United States. It is claimed that the plaintiff expended substantial sums in preparing to perform the contract, including arrangements for distribution of the shrimp in the United States and that Cuba has failed and refused to perform the contract to the plaintiff’s damage of at least $200,000 — apart *5 from expenditures estimating a minimum profit of 10 cents a pound.
The question raised is jurisdiction of this court to attach debts owed by persons in the United States to Cuba — principally funds owed Cuba for sales in the United States. As a result of termination of diplomatic relations between the United States and Cuba, the bank accounts and other property of Cuba in its name have been removed from the United States.
A foreign sovereign is immune from suit in respect of governmental actions in its own territory (Wulfsohn v. Russian Republic, 234 N. Y. 372 [confiscation of furs located in Russia]) and in respect of its purely governmental activities (Matter of United States of Mexico v. Schmuck, 293 N. Y. 264; Lamont v. Travelers Ins. Co., 281 N. Y. 362; Hannes v. Kingdom of Roumania Monopolies Inst., 260 App. Div. 189 [1st Dept.]; Stephen v. Zivnostenska Banka, National Corp., 213 N. Y. S. 2d 396 [New York County]; Et Ve Balik Kurumu v. B. N. S. International Sales Corp., 25 Misc 2d 299 [New York County]).
The courts recognize that sovereign immunity does not extend to commercial transactions. In Et Ve Balik Kurumu v. B. N. S. International Sales Corp. (supra) this court stated (p. 303): “ In my view, the privileged position of a sovereign is one of policy, and as such it should not be applied in matters whoEy of a commercial nature serving not the traditional purposes of government, but rather its proprietary enterprises through entities which need not necessarily be regarded as basic departments of government. And this thesis I would support, even though governments have more and more deemed it essential and proper to extend their functions in aid of their own needy populations or of the ill-fed, ill-clothed, and ill-housed peoples of other lands. In this context, I hold that the purchase of meat for importation and supply to the Turkish army or for resale to the citizens of the Republic of Turkey does not necessarily constitute a ‘ public act ’ in the sense that the performance of such an act is, in its entirety a time-honored function of government to which the ancient rule of sovereign immunity should be appEed in a modern society.”
In the Schmuck case (supra) the Court of Appeals expressly recognized that the view of the Department of State on the immunity to be extended to foreign sovereigns wiE be followed. The State Department has published its official view concerning its ‘1 Changed Policy Concerning the Granting of Sovereign Immunity to Foreign Sovereigns ” which reviews its reasons for supporting the restrictive theory of immunity which does not extend it to commercial transactions and which concludes *6 (26 Dept. State Bull. 984 of June 23, 1952): “Finally, the Department feels that the widespread and increasing practice on the part of governments of engaging in commercial activities makes necessary a practice which will enable persons doing business with them to have their rights determined in the courts. For these reasons it will hereafter be the Department’s policy to follow the restrictive theory of sovereign immunity in the consideration of requests of foreign governments for a grant of sovereign immunity.”
In National Bank v. Republic of China (348 U. S. 356) the Supreme Court took note of this changed policy, stating (p. 360): “ As the responsible agency for the conduct of foreign affairs, the State Department is the normal means of suggesting to the courts that a sovereign be granted immunity from a particular suit. Ex parte Republic of Peru, 318 U. S. 578, 581. Its failure or refusal to suggest such immunity has been accorded significant weight by this Court. See Compania Espanola de Navigacion Maritima, S. A. v. The Navemar, 303 U. S. 68; Republic of Mexico v. Hoffman, 324 U. S. 30. And this for the reason that a major consideration for the rule enunciated in The Schooner Exchange is the embarrassing consequences which judicial rejection of a claim of sovereign immunity may have on diplomatic relations. Recently the State Department has pronounced broadly against recognizing sovereign immunity for the commercial operations of a foreign government, 26 Dept. State Bull. 984 (1952), despite the fact that this Court thirty years earlier rejected the weighty opinion of Judge Mack in The Pesaro, 277 F. 473 (see, also, his opinion in The Gloria, 286 F. 188), for differentiating between commercial and war vessels of governments. Berizzi Bros. Co. v. Steamship Pesaro, 271 U. S. 562.”
This new doctrine applies precisely to Cuba which has taken over many former commercial activities such as production and marketing of sugar and shrimp and also tobacco and cigars which are still sold in the United States. If Cuba is to be permitted to collect dollars on its commercial activities it must respond in our courts on its commercial contracts. So far as attachment of debts to Cuba are concerned, most of the cited cases disclose that attachment is usually used to obtain jurisdiction and the defendant can then raise the question of sovereign immunity by appropriate subsequent proceedings. The warrant of attachment should issue.