**AMKOR CORPORATION, Debtor-in-Possession, Plaintiff,**

v.

**The BANK OF KOREA, Defendant.**

**No. 61 Civ. 4447.**

United States District Court
S. D. New York.
April 24, 1969.

Gladstone & Lowell, New York City, for plaintiff, Milton Broadman, of counsel.

Maxwell T. Cohen, New York City, for defendant.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Defendant Bank of Korea moves to dismiss the complaint of plaintiff Amkor Corporation on the ground that it is entitled to sovereign immunity and is immune from suit.

Plaintiff alleges that on or about July 20, 1960 it entered into an agreement with defendant to sell machinery and equipment to be used in the construction of a caustic soda plant located at Inchon, Korea for a price of $534,600 and that on April 15, 1961 defendant, without justification, cancelled the contract causing plaintiff damage in the amount of $160,000. Alternatively, plaintiff alleges that defendant breached its warranty of authority when it entered into the agreement. The parties have submitted affidavits which more fully outline the dispute.

Apparently, the Bank of Korea, the fiscal arm of the Korean Government, invited bids for the construction of a caustic soda plant to be built for the Korean Explosive Co., Ltd., a private Korean corporation. The defendant was acting as an agent of the Korean Government and pursuant to a program of economic cooperation between the Korean Government and the United States Government. Amkor was the successful bidder for certain machinery and equipment

but subsequently the agreement was cancelled by the Director of the International Cooperation Administration and Amkor was so notified by the Bank of Korea.

The defendant urges that it is immune from suit since it is clear that the party with whom Amkor contracted was the Korean Explosive Co., Ltd., and not the Bank of Korea, the named defendant in the action. This position was pressed before the Department of State during a hearing on the request of the Korean Government for a suggestion of immunity. The Department of State quite correctly recognized that defendant's principal contention was directed to the validity of Amkor's underlying claim and not to the question of sovereign immunity and was therefore for the trial court to determine. In refusing to suggest immunity in this case, the Department of State, in a letter dated September 27, 1968 and addressed to defendant, stated:

"In considering requests for suggestions of sovereign immunity, the Department of State applies the 'restrictive theory' of sovereign immunity as announced in the Tate letter of May 19, 1952. Under that theory the immunity of the sovereign is suggested with respect to governmental or public acts of a State but not with regard to private or commercial acts.

"The Republic of Korea has urged that the Bank of Korea, as a governmentally authorized agent acting without profit to itself on behalf of the Republic of Korea pursuant to an agreement between the Government of the United States and the Republic of Korea, was engaged in public acts within the meaning of the Tate letter and is therefore immune from suit.

"The Department of State regrets that it cannot agree with this conclusion. The essence of the transaction, as alleged, is a simple contract for purchase of commercial articles on behalf of a commercial enterprise. The fact that the Bank of Korea was acting pursuant to an agreement between the Government of the United States and the Government of the Republic of Korea, or that it is an official arm of the Republic of Korea, does not alter the commercial nature of the transaction. The policy expressed in the Tate letter focusses upon the nature of the transaction and not upon the character of the government agency involved or upon its reasons for engaging in a transaction. The allegation that this agency has undertaken a commercial activity is dispositive. The Department of State, therefore, finds it necessary to decline the request of the Government of the Republic of Korea that a suggestion of sovereign immunity be made."

Subsequently, upon the request of defendant for reconsideration, the Department adhered to its decision declining to suggest immunity.

■■ The Department of State's determination that immunity need not be extended is binding on this Court. Victory Transport, Inc. v. Comisaria General, 336 F.2d 354, 358 (2d Cir. 1964). See Republic of Mexico v. Hoffman, 324 U.S. 30, 35, 65 S.Ct. 530, 89 L.Ed. 729 (1945). " * * * [C]ourts should deny immunity where the State Department has indicated, either directly or indirectly, that immunity need not be accorded. It makes no sense for the courts to deny a litigant his day in court and to permit the disregard of legal obligations to avoid embarrassing the State Department if that agency indicates it will not be embarrassed." Victory Transport, Inc. v. Comisaria General, supra, 336 F.2d at 358.

■ In any event, it is plain that the activities allegedly engaged in by defendant and giving rise to this dispute are private and commercial in nature rather than public or political acts and, therefore, applying the restrictive theory of sovereign immunity, defendant is not entitled to immunity here.

Defendant's arguments addressed to the merits of the action are wide of the

mark. The sole ground of defendant's motion to dismiss is sovereign immunity from suit and that is the only issue passed on here.

Defendant's motion is in all respects denied.

It is so ordered.