· **ISBRANDTSEN TANKERS, INC.,**
**Plaintiff-Appellant,**

**v.**

**PRESIDENT OF INDIA, Represented by**
· **the Director General of the India Supply Mission, Defendant-Appellee.**

**No. 928, Docket 71-1198.**

United States Court of Appeals,
Second Circuit.

Argued June 23, 1971.

Decided July 27, 1971.

---

Woodson D. Scott, New York City (Lord, Day & Lord, New York City), for plaintiff-appellant.

Eberhard P. Deutsch, New Orleans, La. (Deutsch, Kerrigan & Stiles, New Orleans, La., H. Barton Williams, New Orleans, La., and Charles L. Trowbridge, New York City, of counsel), for defendant-appellee.

Before SMITH and HAYS, Circuit Judges, and POLLACK, District Judge.*

### J. JOSEPH SMITH, Circuit Judge:

■ Appellant shipowner instituted suit in the United States District Court for the Southern District of New York against the defendant-appellee, seeking damages resulting from alleged delays of its vessels during October and November of 1966 near the port of Calcutta. The District Court (Thomas F. Croake, Judge) dismissed one of the three causes of action alleged in appellant's second amended complaint, and the shipowner appeals.[1] We find no error and affirm the dismissal.

The dismissal by Judge Croake was premised upon a formal written suggestion of immunity by the United States Department of State, transmitted through the office of the United States Attorney General, after hearings and the filing of briefs with the State Department.

Appellant shipowner and appellee entered into a charter party in July of 1966 for the transportation of grain to India. The shipment was part of a massive effort on the part of the Indian government to end a food shortage, resulting from an extreme drought in 1965 and 1966. The cause of action which is the subject of this appeal sought damages for improper and unreasonable detention of appellant's vessels,[2] preventing discharge of their cargo and causing substantial loss of time and money. Appellant contends that notwithstanding the advisory letter from the State Department recommending immunity, the District Court has jurisdiction in this matter because of the existence of a waiver of immunity by appellee, said to be contained in paragraph 34 of the contract charter between the parties.[3] Additionally, appellant argues that the appearance by appellee by means of serving and filing answering papers constitutes a waiver of any sovereign immunity that may have previously existed.

■ Whether or not these arguments possess logical force, in cases in-

---

* United States District Judge for the Southern District of New York, sitting by designation.

1. The parties have assumed that the order is appealable under 28 U.S.C. § 1292(a)(3) as a decree in admiralty determining rights and liabilities of the parties, even though other claims remain unresolved. We conclude that the appeal will lie. See 9 Moore Federal Practice 2d Ed. ¶ 110.19 [3] n. 10; Crews v. Arundel Corp., 386 F.2d 528 (5 Cir. 1967). But cf. Albatross Shipping Corp. v. Stewart, 326 F.2d 208 (5 Cir. 1964), The Maria, 67 F.2d 571 (2d Cir. 1933).

2. The transport ships were of the tanker type. By reason of their size they were unable to negotiate the Hooghly River to the port of Calcutta. In accordance with arrangements set forth in the charter parties, these ships transferred their cargoes at a number of "lightening anchorages" off the east coast of India into smaller "lightening vessels," employed by the shipowners for the purpose of delivering the cargo to Calcutta. Allegedly because of the large number of vessels, these carriers were obliged to wait their turn for a certain period of time in the Bay of Bengal, before completing the transport up the Hooghly River to Calcutta.

3. Paragraph 34 of the charter party provides:
Any and all differences and disputes arising under this Charter Party are to be determined by the U. S. Courts for the Southern District of New York, but this does not preclude a party from pursuing any *in rem* proceedings in another jurisdiction or from submission by mutual agreement of any differences or disputes to arbitration.

volving the governments of foreign powers the judiciary has candidly admitted that there exist interests beyond those of purely legal concern. A judicial decision against the government of a foreign nation could conceivably cause severe international repercussions, the full consequences of which the courts are in no position to predict. As this court noted in Victory Transport, Inc. v. Comisaria General, 336 F.2d 354, 358 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S. Ct. 1763, 14 L.Ed.2d 698 (1965), "[i]n delineating the scope of a doctrine designed to avert possible embarrassment to the conduct of our foreign relations, the courts have quite naturally deferred to the policy pronouncements of the State Department." See also, National City Bank of New York v. Republic of China, 348 U.S. 356, 360–361, 75 S.Ct. 423, 99 L.Ed. 389 (1955).

Appellant emphasizes that traditionally, sovereign immunity has been afforded to foreign governments only in regard to actions of a public, as opposed to a private/commercial, nature. Here, it is contended, the actions of the Indian government were wholly concerned with a commercial purchase of grain, and therefore do not concern matters of public policy or governmental discretion. This argument is premised upon the famed letter of Jack B. Tate, Acting Legal Advisor to the State Department, to Philip B. Perlman, Acting Attorney General, dated May 19, 1952 [appearing in 26 State Dept. Bull. 984 (1952)], indicating that it was the policy of our government to adopt the restrictive theory of sovereign immunity, i. e. to grant immunity to acts of a public nature, and to deny it to those of a private nature.

This proposed distinction between acts which are *jure imperii* (which are to be afforded immunity) and those which are *jure gestionis* (which are not), has never been adequately defined, and in fact has been viewed as unworkable by many commentators.[4] In *Victory Transport,* this court adopted the view that acts which are *jure imperii* would be limited to the following:

(1) internal administrative acts, such as expulsion of an alien;

(2) legislative acts, such as nationalization;

(3) acts concerning the armed forces;

(4) acts concerning diplomatic activity;

(5) public loans.

336 F.2d at 360.

Were we required to apply this distinction, as defined, to the facts of the present case, we might well find that the actions of the Indian government were, as appellant contends, purely private commercial decisions.

■ It is true that the mere fact that a contract with a private commercial interest is involved does not automatically render the acts of the foreign government private and commercial. As this court recently noted:

The view that all contracts, regardless of their purpose, should be deemed "private" or "commerical" acts would lead to the conclusion that a contract by a foreign government for the purchase of bullets for its army or for the erection of fortifications do not constitute sovereign acts—a result we viewed as "rather astonishing" in Victory Transport, 336 F.2d at 359. [Heaney v. Government of Spain, 445 F.2d 501 p. 504 (2d Cir., 1971).]

In *Victory Transport,* the contract was, as here, for the carriage of grain, and in the absence of State Department action, jurisdiction was upheld. See also, Pe-

4. See, e. g., Lauterpacht, "The Problems of Jurisdictional Immunities of Foreign States," 28 Brit.Y.B.Int'l L. 220, 225–26 (1951); Fitzmaurice, "State Immunity from Proceedings in Foreign Courts," 14 Brit.Y.B.Int'l L. 101, 123–24 (1933).

trol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103 (2d Cir. 1966).

■ In situations where the State Department has given a formal recommendation, however, the courts need not reach questions of this type. The State Department is to make this determination, in light of the potential consequences to our own international position. Hence once the State Department has ruled in a matter of this nature, the judiciary will not interfere. See Republic of Mexico v. Hoffman, 324 U.S. 30, 35, 65 S.Ct. 530, 89 L.Ed. 729 (1945).

■ Appellant attempts to distinguish the precedents in this area by noting that in none of them had the foreign sovereign contracted to waive its immunity. It is true that in situations where the Executive Branch has made no formal recommendation a foreign sovereign may be held to have waived its immunity. In National City Bank of New York v. Republic of China, *supra,* 348 U.S. at 364, 75 S.Ct. 423, for example, the Supreme Court held that where a sovereign has itself brought suit, it is not immune from a counterclaim arising out of the same subject matter as the suit itself. In that same opinion, however, the Court noted that "[t]he status of the Republic of China in our courts is a matter for determination by the Executive and is outside the competence of this Court." 348 U.S. at 358, 75 S.Ct. at 425.

The potential harm or embarrassment resulting to our government from a judicial finding of jurisdiction, in the face of an Executive recommendation to the contrary, may be just as severe where the foreign sovereign had initially contracted to waive its claim of sovereign immunity as where it had not done so. Though we sympathize with appellant because of the difficult position in which such a holding places it, we have no alternative but to accept the recommendation of the State Department.

The order of the District Court dismissing appellant's second cause of action is affirmed.