Stellita S. **RENCHARD** et al.,
Plaintiffs,

v.

**HUMPHREYS & HARDING, INC.**, et al.,
Defendants.

Civ. A. No. 2128–72.

United States District Court,
District of Columbia.

Sept. 10, 1974.

See also D.C., 59 F.R.D. 530.

Austin F. Canfield, Jr., Edward J. Gorman, Jr., Washington, D. C., for Edward S. Plotkin.

James A Hourihan, Washington, D. C., for McKinney Drilling.

John Davis, Washington, D. C., for Leo A. Daly.

James F. Jordan, Washington, D. C., for Humphreys & Harding, Inc.

James C. Gregg, Washington, D. C., for Hans Scharnberg.

Craig S. Bamberger, Washington, D. C., for Federative Republic of Brazil.

Ross O'Donoghue, Washington, D. C., for Marvoco, Inc.

David E. Menotti, Chas. C. Glover, III, Chas. E. Hill, Washington, D. C., for plaintiffs.

MEMORANDUM

FLANNERY, District Judge.

This memorandum is issued pursuant to the Court's Order of July 26, 1974 denying defendant Federative Republic of Brazil's motion to dismiss based on sovereign immunity.

This action arises out of property damage allegedly suffered by plaintiffs as a result of the construction of Brazil's Chancery on property adjacent to that of plaintiffs. In early 1968, the Embassy of Brazil engaged architects to assist in preparing plans for the new Chancery. In April, 1968, the Embassy engaged its prime construction contractor, defendant Humphreys & Harding, Inc., under a contract providing that the

contractor would indemnify the Embassy for all claims arising from the construction. Humphreys thereafter engaged various subcontractors and excavation began. In November, 1969, plaintiffs noticed that their land was shifting and settling, allegedly because of the excavation which ran to within several feet of plaintiffs' property. As excavation and building progressed, the settling continued, causing considerable damage to plaintiffs' driveway, garage and house. Plaintiffs sought assurances from defendants that repairs would be made but no agreement was reached. This suit was then commenced in October, 1972.

Defendant Brazil moved to dismiss the complaint on grounds of sovereign immunity on December 14, 1972. That motion was denied without prejudice so that Brazil could seek a suggestion of immunity from the Department of State. On January 30, 1974, the Department of State, after studying briefs and hearing oral argument, advised the Brazilian Ambassador that "the present case is not one where a suggestion of sovereign immunity should be made."

Brazil's motion to dismiss presents two basic issues for this Court's consideration. First, this Court must decide whether the Department of State's unequivocal and definite refusal to suggest immunity is conclusive or whether the Court, notwithstanding such a refusal, still may grant immunity. Second, if this Court concludes that such a refusal is not conclusive, should immunity be granted under the circumstances of this case.

I. *Whether the Department of State's refusal to grant immunity is conclusive.*

■ The doctrine of sovereign immunity for foreign nations is invoked "chiefly to avoid possible embarrassment to those responsible for the conduct of the nation's foreign relations." Victory Transport, Inc. v. Comisaria General,

336 F.2d 354, 357 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965); *accord*, National City Bank of New York v. Republic of China, 348 U.S. 356, 361, 75 S.Ct. 423, 99 L.Ed. 389 (1955); Republic of Mexico v. Hoffman, 324 U.S. 30, 34–36, 65 S. Ct. 530, 89 L.Ed. 729 (1945); New York & Cuba Mail Steamship Co. v. Republic of Korea, 132 F.Supp. 684, 686 (S.D.N.Y.1955). Accordingly, both parties agree that a suggestion of immunity is conclusive and binding on the courts.

In addition the courts have recognized that it may be "equally embarrassing" if the courts recognize a claim of immunity on grounds not sanctioned by the political department of the United States Government. Republic of Mexico v. Hoffman, *supra* at 36, 65 S.Ct. 530; *see* Victory Transport Inc. v. Comisaria General, *supra* at 358. Thus, the Second Circuit, in construing *Hoffman*, has stated

> that courts should deny immunity where the State Department has indicated, either directly or indirectly, that immunity need not be accorded. It makes no sense for the courts to deny a litigant his day in court and to permit the disregard of legal obligations to avoid embarrassing the State Department if that agency indicates it will not be embarrassed. *Id.*

*Accord*, Amkor Corp. v. Bank of Korea, 298 F.Supp. 143, 144 (S.D.N.Y.1969) ("Department of State's determination that immunity need not be extended is binding on this Court"); French v. Banco Nacional de Cuba, 23 N.Y.2d 46, 295 N.Y.S.2d 433, 439, 242 N.E.2d 704 (1969) (State Department's refusal to grant immunity is binding).

■ The underlying rationale in these decisions expressing a reluctance on the part of the judiciary to controvert a definite determination of the State Department is grounded in the doctrine of separation of powers. *See* Spacil v. Crowe, 489 F.2d 614, 619 (5th

Cir. 1972). Thus the courts have recognized the executive's constitutional role as the nation's primary organ of foreign policy.

"[T]he degree to which granting or denying a claim of immunity may be important to foreign policy is a question on which the judiciary is particularly illequipped to second-guess the executive. The executive's institutional resources and expertise in foreign affairs far outstrip those of the judiciary. . . . Perhaps more importantly, in the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves. Will granting immunity serve as a bargaining counter in complex diplomatic negotiations? . . . Will it preclude a significant diplomatic advance; perhaps a detente between this country and one with whom we are not on the best speaking terms? These are questions for the executive, not the judiciary." *Id.*

Given these complex factors which undoubtedly do contribute to a decision whether or not to suggest immunity, this Court concludes that it should show the same deference to a Department of State recommendation, regardless of whether it suggests or declines to suggest immunity. This Court agrees that it is ill-equipped to determine whether the Department of State's determination not to suggest immunity is correct. That determination reflects the Department's conclusion that lack of immunity will not cause embarrassment to this country in the conduct of its foreign relations. Since the Department has concluded that the rationale permitting immunity does not exist in this case and since that determination is basically a foreign policy decision, this court finds

no persuasive reason for not considering that determination binding.

■ The Federative Republic of Brazil makes two basic arguments in support of its assertion that the State Department's determination is not binding. First, Brazil contends that case law supports its position. The only case which clearly so held was Berizzi Bros. Co. v. The Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088 (1926). However, *Berizzi* was disapproved in Republic of Mexico v. Hoffman, *supra*, at 35 n. 1, 39–39, 65 S.Ct. 530, and totally ignored in Victory Transport Inc. v. Comisaria General, *supra* at 358.[1] The other cases cited by defendants to the effect that the State Department's determination is not binding are either pure dictum, entirely unnecessary to resolution of the issues there presented, or ambiguous in themselves. More significantly, none of the cases cited by defendant Brazil discuss, much less analyze, the crucial policy considerations which necessarily are involved when the Department determines not to suggest immunity. Hence, for reasons set forth earlier, this Court concludes that when the State Department declines to suggest immunity, the purpose for that immunity vanishes and the courts should not grant it.

■ Brazil's second argument against the binding effect of the State Department's conclusion is somewhat more complex. Brazil appears to accept the dictum in Republic of Mexico v. Hoffman, *supra*, that it would be "equally embarrassing" if a court were to grant immunity on grounds not sanctioned by the United States Government. However, Brazil seeks immunity in this court on grounds purportedly sanctioned by this Government but allegedly misapplied by the State Department in this particular case. Brazil makes this argument because of the Department's state-

[1]. To the extent that New York World's Fair v. Rep. of Guinea, 159 N.Y.L.J. 15, 63 Am.J. Int'l L. 343 (1969) (N.Y.Sup.Ct.1968) supports the defendants' position, this Court agrees with plaintiffs that it is a doubtful precedent in light of the New York Court of Appeals' clear ruling in French v. Banco Nacional de Cuba, *supra*, that the Department of State's refusal to suggest immunity is binding.

ment that "the activities in question are essentially of a private nature under the standards set forth in the Tate letter." Letter from the Department of State to the Ambassador of Brazil, January 30, 1974. In essence, Brazil asks this Court to review the Department's decision in light of the standards enunciated in the Tate letter, itself a policy statement of the Department, and to correct the Department if the court finds that the Department applied those standards incorrectly. This Court declines the invitation.

The proper interpretation of the principles in the Tate letter must be considered in light of the overall objective of the foreign sovereign immunity doctrine —whether the grant of immunity is necessary to avoid embarrassment to this country in the conduct of foreign relations. The principles in the Tate letter, contrary to the implications in defendant's memorandum, are not to be viewed as absolute or unyielding; rather, they are subject to interpretation and change and the Department of State is the proper organization to give such interpretation.[2] The courts should only enter into such interpretation when the Department has refused to indicate its views. *See* Victory Transport, Inc. v. Comisaria General, *supra* at 358. Since the Department has stated its views clearly in this matter, this Court should not redetermine that decision since it would involve a policy decision of a type much more suited to the executive than to the judiciary.

Because the court concludes that the Department of State's suggestion not to grant immunity should be given conclusive effect, it is unnecessary and improper for this Court to consider whether Brazil should be granted immunity under the circumstances of this case.

2. This Court notes that defendant argues at length whether the "purpose" or the "nature" test or both should apply in interpreting the Tate letter. However, since at least 1967, the Department has applied the "nature" test, thus indicating clearly that the principles regarding immunity are subject to

changing interpretation by the executive. *See* Amkor Corp. v. Bank of Korea, 298 F. Supp. 143, 144 (S.D.N.Y.1969) ; Ocean Transport Co. v. Government of Republic of Ivory Coast, 269 F.Supp. 703, 704 n. 1 (E. D.La.1967).