SEA TRANSPORT CORP., as owner of the S/T EAGLE VOYAGER, Plaintiff,

v.

The S/T MANHATTAN, her engines, tackle, etc.,

and against

Manhattan Tankers Co., Inc.,

and against

Commodity Credit Corporation,

and against

United Nations,

and against

Ministry of Food & Civil Supplies for the Government of the People's Republic of Bangladesh, Defendants.

No. 74 Civ. 2096 (WCC).

United States District Court, S. D. New York.

Feb. 21, 1975.

Hill, Betts & Nash, New York City, for plaintiff; Eli Ellis, Edward H. Dugan, Jr., New York City, of counsel.

Burke & Parsons, New York City, for Manhattan Tankers Co.; Raymond J. Burke, Jr., New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

This is an action for damages sustained by the S/T Eagle Voyager as a result of a collision with the S/T Manhattan.

In July, 1972 plaintiff and defendant Commodity Credit Corporation [1] entered

---

1. The Commodity Credit Corporation is an agency of the United States Department of Agriculture created for the purpose of "stabilizing, supporting, and protecting farm income and prices, of assisting in the maintenance of balanced and adequate supplies of agricultural commodities * * * and of facilitating the orderly distribution of agricultural commodities * * *" 15 U.S.C. § 714.

into a voyage charter party whereby plaintiff agreed to let and defendant agreed to hire the S/T Eagle Voyager for a voyage from Gulf ports to Chittagong and/or Chalna, Bangladesh, with a cargo of wheat consigned to defendant, the Ministry of Food & Civil Supplies for the Government of the People's Republic of Bangladesh ("Ministry of Food").

On September 17, 1972 the Eagle Voyager was moored portside to the S/T Manhattan, which was anchored with her port anchor near Kutubdia Island, about 30 miles from Chittagong, Bangladesh for discharging operations. Due to the bad weather and strong current, the mooring lines between the vessels parted and the Eagle Voyager dragged her anchor, moving away from The Manhattan. After several days of continued bad weather, the two ships were again moored together, but were forced to continue maneuvering with their engines to maintain position against the strong current. In the course of such maneuvering, the mooring lines parted again and the collision occurred.

### I.

The action first came before the Court on plaintiff's motion for an order of attachment upon the property of the Ministry of Food pursuant to N.Y.C.P.L.R. Section 6201(1). A subsequent conference before the Court resulted in a motion by the Ministry of Food to dismiss the complaint for lack of jurisdiction. This motion is presently before the Court.

### II.

The Ministry of Food contends that it is entitled to sovereign immunity from the jurisdiction of this Court, and that the New York attachment statute, N.Y. C.P.L.R. Section 6201 et seq., is unconstitutional. Plaintiff, on the other hand, asserts that the New York attachment statute is valid for purposes of obtaining jurisdiction. It contends that it is unfamiliar with the nature of the activities of the Ministry of Food and seeks to gain jurisdiction over it in order to ascertain whether its activities may be deemed private, rendering defendant subject to process, or public, entitling it to sovereign immunity.

Since this Court has recently ruled that the New York attachment statute is valid for purposes of gaining jurisdiction over a defendant which is a "foreign corporation or not a resident or domiciliary of the state,"[2] N.Y.C.P.L.R. § 6201(1), the only substantial question presented here is whether the Ministry of Food may properly invoke the doctrine of sovereign immunity.

### III.

■ It is well settled that the doctrine of sovereign immunity is available to a state only when it is sued on a cause of action arising out of a public function. *Victory Transport Inc. v. Comisaria General*, 336 F.2d 354 (2d Cir. 1964), *cert. denied*, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965); *Aerotrade, Inc. v. Republic of Haiti*, 376 F.Supp. 1281 (S.D. N.Y.1974). Therefore, in order to determine whether the Ministry of Food has properly invoked the defense of sovereign immunity, it is necessary to determine whether the activities out of which this action arises were *jure imperii* (public or sovereign functions) or *jure gestionis* (private or commercial functions).

■ In support of its claim of sovereign immunity, defendant has submitted an affidavit of A. Karim Chowdhury, First Secretary of the Bangladesh Embassy in the United States, in which he asserts that the Ministry of Food is a governmental organ which engages in the purely governmental functions of distributing food and other necessities to the people of Bangladesh and does not engage in trade or commercial activities.

In *Victory Transport Inc. v. Comisaria General, supra* at 360, our Court of Appeals formulated the test which a court should follow, absent a formal recommendation from the State Department. The

---

**2.** *Gokay v. Marc Anthony's, Inc.,* 74 Civ. 4577. (Memorandum & Order February 13, 1975)

Court stated that immunity should be denied "unless it is plain that the activity in question falls within one of the categories of strictly political or public acts about which sovereigns have traditionally been quite sensitive." The categories delineated are:

"(1) internal administrative acts, such as expulsion of an alien.

(2) legislative acts, such as nationalization.

(3) acts concerning the armed forces.

(4) acts concerning diplomatic activity.

(5) public loans."

In *Victory Transport*, the appellee sought payment for damages to its vessel which appellant, a branch of the Spanish Ministry of Commerce, voyage-chartered to transport a cargo of surplus wheat purchased pursuant to the Agricultural Trade Development and Assistance Act, 7 U.S.C. § 1691 *et seq.* In an exceptionally thorough opinion which reviewed the law of sovereign immunity, the Court stated that the purchase of wheat is not a strictly public or political act and concluded that the activity in question was more properly labelled *jure gestionis* than *jure imperii.* The Court noted that there was no claim that the wheat would be used for public purposes and therefore presumed that it was intended for resale to Spanish nationals. Even though, in a broad sense, the transaction would "help feed the people of Spain," it was "conducted through private channels of trade" whether or not it resulted in a profit.

Although the Court did not indicate whether the same result would have been reached even if the wheat had been destined to be given to the poor, it did cite, with apparent approval, *New York and Cuba Mail Steamship Co. v. Republic of Korea,* 132 F.Supp. 684 (S.D.N.Y. 1955). In that case, the defendant, the Republic of Korea, allegedly damaged the plaintiff's vessel while unloading a cargo of rice which was to be distributed free to its civilian and military personnel

during the Korean War. Although the District Court in *New York & Cuba Mail Steamship* did not reach the question of sovereign immunity, the Court of Appeals in *Victory Transport* was influenced by the fact that the State Department refused to suggest immunity from suit "inasmuch as the particular acts out of which the cause of action arose are not shown to be of a purely governmental character." 132 F.Supp. 685. The Court of Appeals observed that, *a fortiori,* the peacetime transportation of wheat for presumptive resale is not a governmental function. 336 F.2d at 362.

In *Isbrandtsen Tankers, Inc. v. President of India,* 446 F.2d 1198 (2d Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed. 369 (1971), the appellant sought damages for improper and unreasonable detention of its vessels which had been chartered to India for the transportation of grain. The shipment was made in conjunction with a massive effort on the part of the Indian Government to overcome the effects of an extreme drought and consequent food shortage. The Department of State filed a formal suggestion of immunity and the Court concluded that it had "no alternative but to accept the recommendation of the State Department." However, it stated that absent a suggestion from the State Department, and in the light of *Victory Transport,* it "might well find that the actions of the Indian government were * * * purely private commercial decisions." 446 F.2d at 1200.

It is therefore clear, under the applicable precedents, that the circumstances under which the Ministry of Food might be deemed immune are extremely limited, but that the issuance *vel non* of a suggestion of immunity by the United States Department of State is of critical importance. This Court has as yet had no indication of the position of the State Department respecting whether the relevant activities of the Bangladesh Ministry of Food & Civil Supplies are entitled to sovereign immunity. Moreover, the affidavit of Mr. Chowdhury, although reciting that the Ministry of Food "en-

gages in purely governmental functions of distributing food and other necessaries to the people in the Nation of Bangladesh," does not state whether the wheat carried by the Eagle Voyager was intended for resale or for free distribution, nor give any other information about the Ministry in general or the present transaction in particular.

The Court will accordingly defer decision on the motion for 30 days to permit time for the parties to obtain from the State Department a communication of its position and to submit any further evidence bearing upon the applicability of the legal precedents discussed hereinabove.

So ordered.