Hilda G. Schwartz, J.
This is a hearing held prior to trial to determine whether this court has in personam jurisdiction over the defendant State of Trinidad and Tobago in the instant action.
This action arises out of the allegedly negligent medical treatment the then infant plaintiff received on or about June 5, 1960 in the Port of Spain General Hospital, located in and owned, operated and controlled by the State of Trinidad and Tobago, whereby plaintiff sustained serious and substantial injury, resulting in the amputation of his right arm.
In an earlier motion of defendant to dismiss the action for lack of jurisdiction over its person, this court (Fein, J.) denied *102 that branch of the motion addressed to alleged improper or lack of service on the ground that defendant having served its answer, it was too late for it to raise this issue by motion and reserved it for the trial or for resolution on a motion by plaintiff to strike the defense.
As to defendant’s claim of sovereign immunity, the court on such prior motion held that it could not resolve such claim on the face of the papers before it since no document or other communication from the United States State Department or from the Government of the State of Trinidad was submitted. The court stated in its decision on such prior motion: "That a sovereign cannot be sued in a foreign court unless it voluntarily submits to the jurisdiction is a well settled principle of international law. (National City Bank v Republic of China, 348 US 356, rehearing den 349 US 913; Lamont v Travelers Ins. Co., 281 NY 362, 368.) However, modern doctrine applies a restrictive theory of sovereign immunity, recognizing immunity for a foreign State’s public or sovereign acts (jus imperii) but denying immunity to a foreign State’s private or commercial acts (jure gestionis) (Victoria Trans. v. Comisaria Gen. de Abastecimientos y Transportes, 336 F 2d 354, 358; 26 Dept. State Bull. p 984 [1952]). In making the determination the courts defer to policy pronouncements of the State Department of the United States.”
Since the decision above on June 14, 1972, the State Department of the United States on January 11, 1974 ruled that "the restrictive theory of immunity described in the Tate letter must be applied in this case”.
At the close of the hearing, defendant State moved to dismiss the complaint, contending that this court lacked in personam jurisdiction over it on two grounds: (1) that process or its service was insufficient, and (2) that the defendant is immune from suit because of the doctrine of sovereign immunity.
The two grounds which form the basis for defendant’s objection to this court’s exercise of in personam jurisdiction over it have not been established. The court finds that service of process was properly effected in this case by the service of a summons and complaint as follows: (1) on October 24, 1969 by registered mail upon the Attorney General of the State of Trinidad and Tobago; (2) on October 28, 1969, upon defendant State’s agents in New York as follows: (2a) by personal delivery to the Trinidad and Tobago Mission to the United Na *103 tions, 801 Second Ave., New York, N.Y., (2b) by personal delivery to the Trinidad and Tobago Industrial Development Corporation, 400 Madison Ave., New York, N.Y., (2c) by personal delivery to the Trinidad and Tobago Tourist Board, Chrysler Building New York, N.Y., (2d) by personal delivery to the British West Indies Airlines, 610 Fifth Ave., New York, N.Y.
Defendant, in answer to plaintiffs interrogatories, acknowledged that the Attorney General of Trinidad and Tobago is authorized, under the laws of the defendant State, to receive service of process by registered mail in any action commenced by any individual against the State of Trinidad and Tobago. Accordingly, such service upon the Attorney General of the defendant State was made by plaintiffs was sufficient service of process.
In Renchard v Humphreys & Harding (59 FRD 530) service upon the Government of Brazil was upheld where it consisted of (1) service upon the attorney for the Government of Brazil with whom plaintiff had previously dealt concerning the subject matter, (2) service by registered mail upon the Embassy of Brazil in Washington, D. C. and (3) service by registered mail upon the Ministry of External Relations of the Government of Brazil in Brazilia. The District Court there found that such service met the test set forth by the United States Supreme Court in Mullane v Central Hanover Trust Co. (339 US 306), i.e., that the methods used were reasonably calculated to provide adequate notice of the action.
In the case at bar, the methods plaintiffs employed were reasonably calculated to provide adequate notice. In addition to the adequate notice upon service of the Attorney General, defendant should have received notice when its diplomatic agent to the United Nations was personally served. It was reasonable for plaintiffs to expect that this responsible agent would notify its principal, the defendant State, of the action.
In addition, plaintiffs served three corporate agents who were, and still are, located in the city and State of New York and who do business here. These corporate , agents, either wholly or substantially owned and operated by defendant, were reasonably expected to notify the defendant of the action against it. Accordingly plaintiffs’ service of process was properly effected and defendant’s motion dismiss the complaint on this ground is denied.
Defendant also raises the claim of sovereign immunity as a *104 proposed bar to this court’s exercise of in personam jurisdiction over the defendant State. The doctrine of absolute sovereign immunity, as first laid down by Chief Justice Marshall in Schooner Exch. v M’Fadden (7 Crunch [11 US] 116), has been modified. Growing concern for individual rights and public morality, coupled with the increasing entry of governments into what had previously been regarded as private pursuits, has led to a change in the doctrine of sovereign immunity. In 1952, the State Department adopted the restrictive theory of sovereign immunity in the consideration of requests by foreign governments for a grant of sovereign immunity. Pursuant to this restrictive theory of sovereign immunity, when a sovereign nation chooses to engage in commercial ventures outside the traditional area of governmental functions, through corporate or separate entities through which the sovereign acts, the sovereign should be held liable for its acts and sovereign immunity will not be recognized. (26 Dept State Bull, p 984 [1952].)
The doctrine of a foreign sovereign’s immunity from suit is primarily designed to avert possible embarrassment to the conduct of the foreign relations of the United States. Definite suggestions of the State Department that immunity be granted or denied are conclusive on the courts. The courts must follow "the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction”. (United States v Lee, 106 US 196, 209.) In Matter of United States of Mexico v Schmuck (293 NY 264) the Court of Appeals expressly recognized that the view of the Department of State on the immunity to be extended to foreign sovereigns will be followed. And recently, in French v Banco Nacionale de Cuba (23 NY2d 46, 51), the Court of Appeals stated: "On the first of these questions, that of sovereign immunity, the entire court is in agreement with the Appellate Division, and we dispose of the point very quickly. In view of the State Department’s conclusion (set forth in a note not included in the record) that the activities out of which the present action arose 'were of a jure gestionis [commercial] * * * nature’ and its position that immunity should not be granted in such cases, we must decline to accord the defendant sovereign immunity from suit. It is 'not for the courts to allow immunity’ on grounds 'which the government has not seen fit to recognize.’ (Republic of Mexico v. Hoffman, 324 U. S. 30, 35, *105 see also, National Bank v. Republic of China, 348 U. S. 356, 560, Victory Transp. v. Comisaria General, 336 F. 2d 354, 360 cert, denied 381 U. S. 934).” This principle is now well established. (Petrol Shipping Corp. v Kingdom of Greece, 360 F2d 103; Heaney v Government of Spain, 445 F2d 501; Isbrandtsen Tankers v President of India, 446 F2d 1198; Three Stars Trading Co. v Republic of Cuba, 32 Misc 2d 4.)
The rule making an executive suggestion that immunity be granted or denied conclusive upon the courts rests on the grounds that primarily the claim of a foreign sovereign of immunity from suit presents a political rather than a judicial question. (New York & Cuba Mail S. S. Co. v Republic of Korea, 132 F Supp 684; Et Ve Balik Kurumu v B.N.S. Int. Sales Corp., 25 Misc 2d 299, affd 17 AD2d 927.) A court’s proper function is to enforce the political decisions of the State Department on such matters. (New York & Cuba Mail S. S. Co. v Republic of Korea, supra.) This is true of suggestions that immunity be denied, as well as of suggestions that immunity be granted.
Recognition by the courts of an immunity upon principles which the political department of government has not sanctioned may be equally embarrassing to it in securing the protection of the national interests of the United States and their recognition by other Nations (Republic of Mexico v Hoffman, 324 US 30; Victory Transps. v Comisaria Gen. de Abastecimientos y Transportes, 336 F2d 354, cert den 381 US 934). The practice of the courts of following the executive determinations entails ho abdication of judicial power; it is a self-imposed restraint to avoid embarrassment of the executive branch in the conduct of foreign affairs (New York & Cuba Mail S. S. Co. v Republic of Korea, supra).
In the present case, the State Department, after weighing all aspects of this matter, denied defendant’s request for sovereign immunity. Defendant State’s motion to dismiss this action on the ground of sovereign immunity is denied.
After the hearing, the court finds that it has in personam jurisdiction over defendant State of Trinidad and Tobago. The matter is set down for a prompt trial.