**CARAVEL OFFICE BUILDING COMPANY, a limited partnership, and Clifford J. Hynning, Appellants,**

**v.**

**The PERUVIAN AIR ATTACHE, currently Major General Victor Valequec, Appellee.**

**No. 9185.**

District of Columbia Court of Appeals.

Argued June 10, 1975.

Decided Oct. 23, 1975.

As Amended Jan. 9, 1976.

Clifford J. Hynning, entered an appearance for Caravel Office Building Co.

No appearance was entered for appellee.

Before REILLY, Chief Judge, and KELLY and KERN, Associate Judges.

REILLY, Chief Judge:

This is an appeal by lessors of a Connecticut Avenue office building from an order of the Superior Court dismissing an action against the Peruvian Air Attache for breach of a lease. Dismissal was predicated upon a finding that both defendants, the Air Attache and the Ambassador of Peru, as accredited diplomats, were immune from suit under the provisions of §§ 252–254 of Title 22 of the United States Code.[1] We reverse.

The complaint asserts that appellants entered into a leasing agreement for certain office space on September 2, 1970, with the Peruvian Air Attache, who was then Major General FAP Daniel Pena M. Under its terms, the lease was to run for a period of five years commencing November 15, 1970, at an annual rental of $10,524.24, payable in monthly installments. On February 21, 1973, appellants received a letter

---

1. The lessors do not appeal from the dismissal of the codefendant, the Ambassador. Thus we need not concern ourselves with the question of whether the trial court lacked jurisdiction under 28 U.S.C. § 1251, which vests the United States Supreme Court with original and exclusive jurisdiction over suits against Ambassadors or other public Ministers of foreign states. It has been held that the grant of jurisdiction in Article 3, Section 2, of the Constitution was not necessarily exclusive. *Ames v. Kansas*, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884).

from Major General Enrique Schroth, who had succeeded the signatory as Air Attache, notifying them that, pursuant to an order of his government, he and his staff would vacate the premises on May 31, 1973, in order to move into another Washington building the Peruvian Government had recently purchased to accommodate the staff of its Embassy as well as that of the Air Attache. Despite written protests by the lessors—their position was that the circumstances stated did not warrant the exercise of a 90-day clause in the lease—the tenants quit the premises on the day proposed. A replacement was not found until four months later.

In their complaint, appellants seek damages in the amount of $5,976.64 for unpaid rent and certain operating and reconditioning expenses, naming as defendants "Ambassador Fernando Berckemeyer" and "The Peruvian Air Attache, currently Major General Victor Valequec." Neither entered an appearance. Appellants moved for a default judgment or a hearing on the matter. On December 17, 1974, the trial judge dismissed the complaint with prejudice, noting for the record that the suit was dismissed pursuant to 22 U.S.C. § 252. The court evidently relied on an official certification it had received from the Department of State averring that both defendants were duly registered with the Department and entitled to immunity under the provisions of 22 U.S.C. §§ 252–254. On appeal, the sole issue which we need consider is not the construction to be placed on the terms of the lease, but whether the provisions of § 252 require the dismissal of this action.

■ This section of the Code entitled "Suits against ministers and their domestics prohibited", provides as follows:

Whenever any writ or process is sued out or prosecuted by any person in any court of the United States, or of a State, or by any judge or justice, whereby the person of any ambassador or public min-

ister of any foreign prince or State, authorized and received as such by the President, or any domestic or domestic servant of any such minister, is arrested or imprisoned, or his goods or chattels are distrained, seized, or attached, such writ or process shall be deemed void.

The purpose of this section is to protect ambassadors and other foreign diplomats from personal arrest or detention or from having their possessions seized or attached by any judicial process. It is declarative of well established principles of international law regarding the personal inviolability of foreign emissaries. *See Hellenic Lines, Ltd. v. Moore,* 120 U.S.App.D.C. 288, 345 F.2d 978 (1965); *Trost v. Tompkins,* D.C.Mun.App., 44 A.2d 226 (1945). This section derives from an Act of Parliament, passed in 1708 (7 Anne, ch. 12), when diplomatic relations between Great Britain and Russia were jeopardized by the arrest for debt of the Russian Ambassador to London. *See Trost v. Tompkins, supra.* The following section, 253, makes any person serving a writ or process in violation of § 252 subject to fine or imprisonment.

In the case before us, we note initially that service was made on the defendant by certified mail, return receipt requested, addressed to the Peruvian Air Attache (currently Major General Victor Valequec), Embassy of Peru, 1700 Massachusetts Avenue, N.W., Washington, D. C. No attempt to serve a writ on either defendant personally was made. Appellants apparently elected to follow this procedure because 22 U.S.C. § 252 has been construed as shielding diplomats from compulsory service of process. *See Hellenic Lines, Ltd. v. Moore, supra.*

■ We are satisfied, however, that the method of service utilized in the present case, *i. e.,* certified or registered mail, is not barred by the statute, as no restraint of person or property would result therefrom. This method of service survived a motion to quash in a suit in the

United States District Court for the District of Columbia, where an abutting landowner sued the Ambassador of Brazil for damages to his land in connection with the construction of the Brazilian Embassy. *Renchard v. Humphreys & Harding, Inc.,* 59 F.R.D. 530 (D.D.C.1973). We uphold the kind of service utilized here as reasonably calculated to give adequate notice. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Here the order of dismissal, however, was apparently not based upon misgivings as to the validity of the means of service but upon the assumption that 22 U.S.C. § 252 established a complete bar to the action. Prior to dismissal, an official communication had been forwarded to the court by the Assistant Chief of Protocol, which acknowledged that Messrs. Berckemeyer and Valequec are registered diplomats with the Department of State, and stated that both enjoy "full diplomatic immunity from judicial process under the provisions of Sections 252–254 of Title 22 of the United States Code."

At the suggestion of appellants in oral argument, we requested further advice from the Department of State, and received a reply from the Legal Adviser of that Department, which places the matter in a clearer light. His letter indicates that the certification given the trial court concerned only the personal immunity of the named individuals and that the certification of their diplomatic status would have no bearing if the plaintiffs were in fact suing the Government of Peru rather than the nominal defendants. The letter [2] reads, in part:

**2.** The full text appears in the appendix to this opinion.

**3.** In *Renchard*, the State Department's procedures included a hearing and the submission of written briefs. This is consistent with what appears to be a current State Department policy on immunity determinations which favors the rudimentary elements of due

The fact that the Department of State issued a certificate of immunity status does not reflect any conclusion by the Department on the merits of the underlying legal action. It is merely a confirmation of the entitlement of the individuals involved to the benefits of the immunity statute and acts to put the Court on notice that because of this immunity, jurisdiction may not be exercised over such persons in the absence of a formal waiver thereof.

If, however, the plaintiff has brought the action in question against the foreign government rather than the individuals named in the action, then the State Department certification of immunity status does not affect the question of a sovereign immunity defense available to the defendant foreign government.

The letter goes on to say that if the issue is whether the foreign government can claim sovereign immunity, then the usual procedure requires the country asserting such claim either to plead such immunity as a defense in court or make a formal request to the Department of State for a ruling. The Department would then determine whether to ask the Department of Justice to file a suggestion of sovereign immunity.

The procedure referred to in the Legal Adviser's letter has been followed in the past in suits against foreign sovereigns. *See, e. g., Ex Parte Republic of Peru,* 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 *(1943); In re Muir,* 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383 (1921); *Renchard v. Humphreys & Harding,* 381 F.Supp. 382 (D.D.C.1974).[3] A formal "suggestion of sovereign immunity" once transmitted by

process as opposed to a purely ex parte determination. *See* Monroe Leigh, *Note, Sovereign Immunity—The Case of the 'Imias',* 68 Am.J.Int'l L. 280, 281–82 (1974). The record in the instant case does not show that the Government of Peru or the named defendants made a formal request for immunity. In fact, they entered no appearance.

the State and Justice Departments to the courts is usually conclusive, the courts generally refusing to look behind such executive department determinations. *Carrera v. Carrera,* 84 U.S.App.D.C. 333, 174 F.2d 496 (1949); *Trost v. Tompkins, supra.*

■ In this posture of the case, what is left for us to decide is whether this is an action against the Government of Peru or against the Air Attache as a private individual. We conclude that the whole tenor of the complaint demonstrates that appellants were actually suing Peru, designating the particular defendant simply as its representative. The Air Attache against whom the action was filed was not a party to either of the events giving rise to this lawsuit, *i. e.,* the execution of the lease and the vacation of the premises. His only connection with the appellants is that he is the successor to the previous Air Attaches with whom they dealt as lessees. This defendant, as the caption indicates, is simply the "current" Air Attache. The subject of the lease on which appellants' action is based was commercial office space to be used by the Office of the Air Attache for official business of his government, not for the personal use of the Air Attache or any other diplomat. It is clear, therefore, that the named defendant is being sued not as a private individual but only in his representative capacity as an agent of a foreign government.

Accordingly, the personal diplomatic immunity provided by 22 U.S.C. § 252 does not bar this action and the order of dismissal must be vacated. In remanding the case for further proceedings, we direct that the trial court forward a copy of this opinion with its appendix to the Embassy of Peru and its Air Attache, and that by order of the court the Government of Peru be given a further opportunity to answer and to present the matter to the Department of State.

*Reversed and remanded.*

APPENDIX

DEPARTMENT OF STATE
THE LEGAL ADVISER
Washington

[SEAL]

July 11, 1975

Mr. Alexander L. Stevas, Clerk

District of Columbia Court of Appeals

400 F Street, N.W.

Washington, D.C. 20001

Re: No. 9185—*Caravel Office Building Co. and Clifford J. Hynning v. The Peruvian Air Attache*

Dear Mr. Stevas:

In your letter of June 5, you requested the submission of a memorandum or brief expression of views on the legal issues in the above-mentioned case, now pending before the District of Columbia Court of Appeals. This office has been supplied a copy of the brief submitted by the plaintiff-appellant and has focused upon the issues raised therein. In addition, a member of my staff was present during the oral argument on plaintiff's appeal which was heard on June 10. The comments below reflect the Department's views of those issues which fall within its competence.

The Order of Chief Judge Greene dated December 18, 1974, dismissing plaintiff's action with prejudice cites the fact that the defendants (the Peruvian Ambassador and Air Attache) enjoy full diplomatic immunity from judicial process under provisions of Title 22 sections 252–254 of the United States Code. Judge Greene's decision followed the receipt of a certification from the Department of State that both defendants were fully accredited diplomatic officers who enjoy immunity from legal process under provisions of the cited statute.

The fact that the Department of State issued a certificate of immunity status does

not reflect any conclusion by the Department on the merits of the underlying legal action. It is merely a confirmation of the entitlement of the individuals involved to the benefits of the immunity statute and acts to put the Court on notice that because of this immunity, jurisdiction may not be exercised over such persons in the absence of a formal waiver thereof.

If, however, the plaintiff has brought the action in question against the foreign government rather than the individuals named in the action, then the State Department certification of immunity status does not affect the question of a sovereign immunity defense available to the defendant foreign government.

If the basic issue of the lawsuit is whether the foreign government in question can claim sovereign immunity as a defense to the action, then the usual procedures followed by the Department of State in handling sovereign immunity questions should be applied. Under this procedure a foreign government may assert a defense of sovereign immunity to the Court. It may also request the Department of State to recognize and allow its claim of immunity. In the latter event, the Department of State will allow both sides the opportunity to be heard on the question of immunity. Once this hearing has been completed, the Department of State will determine whether or not to ask the Justice Department to file a suggestion of sovereign immunity with the Court which has jurisdiction over the action. A determination of the sovereign immunity question is separate and distinct from any certification as to the immunity status of an individual who may be associated with the foreign government involved. The Department of State has not been requested to recognize a claim of sovereign immunity in this case and expresses no opinion on the merits of that question.

I hope that this information will be helpful in response to the inquiries raised in your letter of June 5, 1975.

Sincerely,

/s/ Monroe Leigh
Monroe Leigh